UNITED STATES of America, Appellee,

v.

**Willard MAKES ROOM For Them, Jr., Appellant.**

No. 94–2686.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1994.

Decided March 1, 1995.

---

Robert Anderson, Pierre, SD, argued, for appellant.

Dennis R. Holmes, Pierre, SD, argued, for appellee.

Before MAGILL, Circuit Judge, CAMPBELL, Senior Circuit Judge,* and LOKEN, Circuit Judge.

* THE HONORABLE LEVIN H. CAMPBELL, Senior United States Circuit Judge for the First Circuit, sitting by designation.

1. We refer to these juveniles only by the nature of their relationship to Makes Room (e.g., "the

MAGILL, Circuit Judge.

Willard Makes Room For Them, Jr. (Makes Room), appeals his conviction and sentence for second degree murder, presenting five issues on appeal. We affirm the conviction and sentence in all respects save one. We reverse the two level enhancement under U.S.S.G. § 3B1.1(c) for leadership role and remand for resentencing.

## I. BACKGROUND

This case arises from an unfortunate mix of juveniles,[1] alcohol and weapons. The events giving rise to the charged offense occurred on the Rosebud Indian Reservation in South Dakota. On the afternoon of November 2, 1993, Makes Room, who was nineteen at the time, and his older brother Dominic began drinking heavily while visiting the reservation. By approximately 10 p.m., the brothers wound up at the home of Phyllis Tools in the nearby town of Parmelee, where they met two juvenile cousins and continued to drink.

A group of eight juveniles was cruising the streets of Parmelee in a Chevrolet Impala that night. After cruising around town and out to a nearby water tower, the group (which included the fourteen-year-old victim) drove by Ms. Tools' house. While driving by, the Impala "spun out" and the occupants threw a stick at the people standing in Ms. Tools' yard. One of Makes Room's cousins identified the car, and the cousins obtained two baseball bats from Ms. Tools' house and placed them in Makes Room's Oldsmobile in preparation for a fight. The Impala drove by Ms. Tools' house again, and then parked on "water tower hill" where it began to flash its headlights. Makes Room, Dominic and the two cousins saw this and drove to water tower hill. On the way, Makes Room's Oldsmobile became stuck in a ditch. Meanwhile, the Impala drove with its lights off from water tower hill into town and back onto an adjacent hill known as Boob's Hill. The Impala, too, became stuck.

older cousin") or by their role in the offense (e.g., "the driver of the Impala"). This practice does not contribute to clarity, but is necessary in order to protect the privacy rights of the involved juveniles. See 18 U.S.C. § 3509(d)(1).

Dominic fell down while trying to free the Oldsmobile and was too drunk to get back up. Makes Room and his cousins decided to surprise the juveniles and take their Impala in order to free Makes Room's Oldsmobile. The trio carried the baseball bats and a metal bar, and when they reached the Impala, they found the seventeen-year-old driver jacking it up. The victim was still inside the car, and the other juveniles were standing around the back of the Impala. There was a brief scuffle, and the driver and one of the juveniles ran away, chased by Makes Room's cousins. The cousins returned after losing their quarry. One by one, all the occupants of the Impala, except the victim, fled.

The victim decided to protect himself by locking himself in the Impala. The cousins began smashing the windows of the Impala without knowing that the victim was in the car. When they discovered the victim, Makes Room's older cousin punched him. The younger cousin dragged him out of the car by the hood of his sweatshirt. The victim broke free and fled, but the younger cousin threw the metal bar at him and knocked him down. Makes Room and his cousins each hit the victim with their weapons several times. Makes Room then instructed his younger cousin to hold the victim so that he could hit him with the metal bar. In a wild swing, Makes Room hit both the victim and the younger cousin, who released the victim.

The victim once again fled, but Makes Room caught him and began to beat him. The older cousin attempted to stop the beating, but Makes Room told the cousin to leave him alone. At this point, the two cousins fled. Makes Room later returned to the Oldsmobile, where he found Dominic passed out. The pair ran into a creek bed, where they stayed until the next morning (November 3).

The next morning, the pair returned to Ms. Tools' house, and Makes Room began drinking again. At approximately 11 p.m. the night of November 3, Makes Room was arrested on unrelated tribal bench warrants. He was taken to Bureau of Indian Affairs jail and held there overnight. The next morning, Makes Room was offered breakfast, but he

only drank coffee. At approximately noon, FBI Special Agent Paul Pritchard and another agent interviewed Makes Room. The interview took place in a large well-lighted room. Makes Room was not restrained during the interview, and no threats or promises were made to him.

Agent Pritchard informed Makes Room of the nature of the investigation, and of Agent Pritchard's role as investigator. Agent Pritchard informed Makes Room of his *Miranda* rights both orally and in writing and asked if Makes Room would be willing to participate in an interview. Makes Room agreed to participate in the interview and signed a standard waiver form. Makes Room told Agent Pritchard that he was not intoxicated and Agent Pritchard observed that Makes Room was sober, uninjured, alert and attentive. Then, over an approximately two-and-one-half-hour period, Makes Room made a general confession. Makes Room was arrested later that day on a second degree murder charge. When asked to identify the murder weapon the next day, Makes Room invoked his *Miranda* right to have counsel present.

Makes Room filed a motion to suppress statements made during his interview with the FBI investigators, which was denied. On April 19, 1994, a jury trial was conducted before the Honorable Lawrence L. Piersol. The jury returned a verdict of guilty on the charged offense of second degree murder. Due to scheduling difficulties, the case was transferred to the Honorable John B. Jones for sentencing. On June 28, 1994, a sentencing hearing was held, and Makes Room was sentenced to a term of 192 months imprisonment. Makes Room timely appealed his conviction and his sentence.

## II. DISCUSSION

Makes Room presents five arguments on appeal. First, Makes Room argues that the district court erred when it refused to suppress his statements made during custodial interrogation by FBI agents. Second, Makes Room argues that Judge Jones abused his discretion when he refused to transfer the case to Judge Piersol, who pre-

sided over the trial, for sentencing. Third, Makes Room argues that the district court clearly erred in refusing a two level reduction for acceptance of responsibility under § 3E1.1(a). Fourth, Makes Room argues that the district court clearly erred in refusing a one level reduction for acceptance of responsibility under § 3E1.1(b)(1). Finally, Makes Room argues that the district court clearly erred in giving a two level enhancement for his leadership role in the offense under § 3B1.1(c). Having carefully reviewed the record and the applicable law, we affirm on the first four issues. We reverse the enhancement for leadership role and remand for resentencing.

**A. The trial court properly admitted statements made during custodial interrogation.**

■ Makes Room does not indicate whether his involuntariness argument is based upon *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or the Fifth Amendment "proper."[2] Because we hold that Makes Room knowingly and voluntarily waived his *Miranda* rights and his Fifth Amendment rights (by confessing), we need not resolve this ambiguity. We review waivers of both types of rights under the same standard. We accept the district court's factual findings unless they are clearly erroneous. We review the ultimate determination that the accused knowingly and voluntarily waived these rights de novo. *United States v. Bordeaux,* 980 F.2d 534, 538 (8th Cir.1992) (Fifth Amendment); *United States v. Jones,* 23 F.3d 1307, 1313 (8th Cir.1994) (*Miranda* rights).

■ We consider the totality of the circumstances, including the factors specifically enumerated by statute, in order to answer the ultimate question whether the accused's will was overborne. *Bordeaux,* 980 F.2d at 538; *Jones,* 23 F.3d at 1313. We begin by reviewing the statutory factors bearing on the voluntariness evaluation. 18 U.S.C. § 3501(b) provides:

(b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

■ Applying these factors, we find that less than one full day passed between Makes Room's arrest and his arraignment. Agent Pritchard informed Makes Room of the nature of the charge, and of Agent Pritchard's role as investigator. Makes Room was told that his potential involvement in the victim's death was the subject of the investigation. The fact that Makes Room did not take the situation as seriously as perhaps he should have does not make his waiver or his confession involuntary. *See Rachlin v. United States,* 723 F.2d 1373, 1378 (8th Cir.1983) (confession of suspect in counterfeiting investigation who cavalierly admitted involvement not involuntary). Makes Room was advised in writing and orally that he need not make any statement. He was similarly advised in writing and orally that any such statement that he made could be used against him.

2. In his argument, Makes Room refers to the waiver of *Miranda* rights form that he executed. Appellant's Br. at 14, 16. It is unclear whether this reference is intended merely as evidence that the subsequent confession was involuntarily given, or as an argument that the waiver of *Miranda* rights was itself involuntary. In order to do justice to Makes Room's argument, we consider both possibilities.

Likewise, although he did not request counsel, he was advised of his right to have counsel present. Consideration of these factors leads us to conclude that the trial court was correct in its admission of the confession. Our analysis does not end here, however. In order to adequately account for the totality of the circumstances, we now consider several additional factors.

Makes Room's primary argument is that his waiver and confession were involuntary because he was intoxicated. We reject this argument. Although Makes Room was intoxicated when arrested the night of November 3, by the time he waived his rights thirteen hours later, the effects of the alcohol had worn off. Makes Room told Agent Pritchard that he was not intoxicated and Agent Pritchard's observations corroborated Makes Room's statement. We have repeatedly declined to adopt a per se rule of involuntariness when confronted with intoxication and/or fatigue, and we decline to do so now. *See, e.g., United States v. Casal,* 915 F.2d 1225, 1229 (8th Cir.1990), *cert. denied,* 499 U.S. 941, 111 S.Ct. 1400, 113 L.Ed.2d 455 (1991).

█ Makes Room also argues that his waiver and confession were involuntary because he is of average or lower than average intelligence with only an eighth grade education, and is therefore peculiarly susceptible to having his will overborne. We find no merit to this contention. Although age, education and experience are factors in the voluntariness analysis, they are not dispositive. *Colorado v. Connelly,* 479 U.S. 157, 165, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986). Makes Room was clearly intelligent enough to understand his rights and to know how to invoke them. Indeed, he invoked these rights the next day.

Considering these factors in totality, we cannot find that Makes Room's will was overborne, either as regards his confession or his *Miranda* waiver. We may assume for the sake of argument that Makes Room had a somewhat diminished capacity to resist pressure to waive his rights and confess. However, this is one of two factors; we must also consider the conduct of the police. *Jenner v. Smith,* 982 F.2d 329, 333 (8th Cir.), *cert.*

*denied,* —— U.S. ——, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993); *United States v. Jorgensen,* 871 F.2d 725, 729 (8th Cir.1989). We simply do not find the requisite coercive activity here. Neither Agent Pritchard's suggestion of "memory techniques" to Makes Room nor his use of "suggestive" questions is improper. *Jenner,* 982 F.2d at 332, 334 (various questioning tactics did not render admissions involuntary). No threats or promises were made. The duration of the interrogation was not coercive, and Makes Room was given breaks when he requested them. *Id.* at 334 (six-hour interview did not render confession involuntary). Thus, we find no error in the decision by the trial court to admit Makes Room's confession.

**B. The sentencing judge did not abuse his discretion when he refused to transfer the case to the trial judge for sentencing.**

█ Makes Room argues that the sentencing judge abused his discretion by denying Makes Room's request to have the case transferred to the trial judge for sentencing. We find no merit in this argument. A defendant need not be sentenced by the same judge who presided at the trial of the case. *United States v. Whitfield,* 874 F.2d 591, 593 (8th Cir.1989). Moreover, in a relatively straightforward case such as this, there is no requirement that the sentencing judge review a transcript of the trial. *Id.* The sentencing judge merely must "familiarize himself with the evidence and legal issues involved and exercise informed discretion in imposing sentence." *Id.*

█ The sentencing judge was able to familiarize himself with the evidence and legal issues involved in the case and to exercise informed discretion in imposing sentence. The sentencing transcript indicates that the sentencing judge had presided over a transfer hearing in a case against one of the cousins that involved much of the same evidence. Sentencing Tr. at 3. The same judge also sentenced both cousins. *Id.* at 4. A sentencing judge may also consider evidence introduced during proceedings involving codefendants. *United States v. Fetlow,* 21 F.3d 243, 250 (8th Cir.), *cert. denied,* —— U.S.

——, 115 S.Ct. 456, 130 L.Ed.2d 365 (1994); U.S.S.G. § 1B1.4 (Sentencing court may consider "without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."). The judge reviewed the presentence report in Makes Room's case. Sentencing Tr. at 5. A sentencing judge may properly rely upon the presentence investigation report. *Whitfield,* 874 F.2d at 593. The judge thus had several sources of information from which to become familiar with the evidence involved in Makes Room's case. Moreover, the judge indicated that he was willing to listen to any additional evidence the parties wished to present at sentencing. Sentencing Tr. at 5.

The sentencing judge was also familiar with the legal issues in Makes Room's case. He recognized and evaluated Makes Room's arguments concerning acceptance of responsibility and leadership role. *Id.* In light of the sentencing judge's familiarity with Makes Room's case, we cannot say that he abused his "broad discretion in determining whether he properly [could] perform his sentencing duties in a case upon which he did not preside at trial." *Whitfield,* 874 F.2d at 593.

**C. The district court did not clearly err in refusing a two level reduction for acceptance of responsibility under § 3E1.1(a).**

 U.S.S.G. § 3E1.1(a) provides for a two level decrease in offense level "[i]f the defendant clearly demonstrates acceptance of responsibility *for his offense."* Makes Room bears the burden to prove acceptance of responsibility. *United States v. Lublin,* 981 F.2d 367, 370 (8th Cir.1992). We review the district court's denial of an acceptance of responsibility adjustment under § 3E1.1(a) for clear error. *United States v. Reetz,* 18 F.3d 595, 600 (8th Cir.1994). Makes Room argues that because he offered to plead

guilty to a charge of assault and because he did not contest the underlying facts giving rise to the offense, he is entitled to the reduction. However, the phrase "his offense" used in § 3E1.1(a) refers to the offense of conviction (*i.e.,* second degree murder). Makes Room never accepted responsibility for second degree murder. Acceptance of responsibility for the lesser offense of assault is insufficient to support the decrease. *United States v. Wollenzien,* 972 F.2d 890, 891 (8th Cir.1992).

 Although Makes Room admitted that he did the charged acts, he denied that he acted with malice aforethought. Makes Room's insistence upon a trial does not automatically preclude the reduction. U.S.S.G. § 3E1.1, comment. (n. 2). However, Makes Room consistently denied that he acted with the required mens rea, and therefore denied responsibility for second degree murder. Accordingly, we find no clear error in the district court's conclusion that Makes Room had not "clearly demonstrate[d] acceptance of responsibility for his offense." *See, e.g., United States v. Yankton,* 986 F.2d 1225, 1230 (8th Cir.1993) (denial of adjustment not clear error where defendant convicted of aggravated sexual abuse by use of force demonstrated remorse and admitted intercourse occurred but denied that he forcibly raped victim); *United States v. Drapeau,* 943 F.2d 27, 28–29 (8th Cir.1991) (denial of adjustment not clear error where defendant convicted of sexual abuse demonstrated remorse but stated that he did not remember events because he was drunk and "had difficulty in believing that he had committed the offense"); *United States v. Cree,* 915 F.2d 352, 355 (8th Cir. 1990) (denial of adjustment not clear error where defendant convicted of involuntary manslaughter characterized actions as "mistake").[3]

---

3. *United States v. Big Crow,* 898 F.2d 1326 (8th Cir.1990), upon which Makes Room relies, is not to the contrary. In *Big Crow,* we affirmed a reduction for acceptance of responsibility where the defendant who was convicted of two counts of various species of assault had "expressed doubt that he had intentionally assaulted" the victim. The sentencing court is entitled to broad deference. *United States v. McQuay,* 7 F.3d 800,

801 (8th Cir.1993); *Wollenzien,* 972 F.2d at 891. This deference resulted in affirmance in *Big Crow.* It does not require reversal now; indeed, it counsels against reversal. Makes Room's argument fails to take the standard of review into account. *See United States v. Kerr,* 13 F.3d 203, 206 n. 1 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1629, 128 L.Ed.2d 353 (1994).

**D. The district court did not clearly err in refusing a one level reduction for acceptance of responsibility under § 3E1.1(b)(1).**

We review the district court's denial of a § 3E1.1(b)(1) adjustment for clear error. *McQuay*, 7 F.3d at 801. We find no such error here. A one level adjustment under § 3E1.1(b)(1) is available only where the defendant has already qualified for a two level reduction for acceptance of responsibility under § 3E1.1(a). *United States v. Tovar*, 27 F.3d 497, 499 n. 1 (10th Cir.1994). Because the district court properly denied the § 3E1.1(a) reduction, it properly denied the § 3E1.1(b)(1) reduction as well.

**E. The district court erred in giving a two level enhancement for Makes Room's role in the offense under § 3B1.1(c).**

 Section 3B1.1(c) provides for a two level enhancement if "the defendant was an organizer, leader, manager, or supervisor" in the criminal activity. The district court found that Makes Room was a leader because it found that he "was the driver of the car, that he was older than the other participants who were [ ] 14 and 15 years old, and . . . [that he admitted] that he was showing [the occupants of the Impala] that [the occupants of the Oldsmobile] could fight back." Sentencing Tr. at 25. We reverse the grant of the enhancement and remand for resentencing.

 The government failed to provide sufficient evidence to the sentencing judge to support the enhancement. The government bears the burden to prove by a preponderance of the evidence that Makes Room acted in an aggravating role. *United States v. Monroe*, 978 F.2d 433, 435 (8th Cir.1992); *United States v. Levy*, 992 F.2d 1081, 1083 (10th Cir.1993). The sentencing judge stated

that he relied upon the presentence report in granting the enhancement. Sentencing Tr. at 5. However, Makes Room objected to the recommended enhancement, and objected-to portions of the presentencing report may not be relied upon as evidence by the sentencing judge.[4] Rather, "[i]f the sentencing court elects to consider the disputed matter, it must receive evidence and make a finding based on the preponderance of the evidence." *Fetlow*, 21 F.3d at 248; *accord United States v. Elwood*, 999 F.2d 814, 817 (5th Cir.1993). Because the sentencing judge did not preside over the trial and no transcript of the trial was before the sentencing judge, evidence introduced at trial cannot justify the enhancement. Moreover, although the sentencing judge presided over related evidentiary proceedings involving the two juvenile cousins, the transcripts of these proceedings are not part of the record on appeal. Thus, we cannot consider evidence introduced in these proceedings.[5] No supporting evidence was introduced at the sentencing hearing. Thus, we are confronted with a situation in which the government has failed to place any evidence to justify the enhancement into the record. Accordingly, we hold that the government failed to carry its burden to justify the enhancement.

The district court erred when it relied upon the conclusory and unsupported statement contained in the presentence report to impose the enhancement. Although we question the application of § 3B1.1(c) to activity that the sentencing judge noted "might be more accurately described as a small mob rather than organized activity," we believe that this is a determination for the sentencing judge to make. Accordingly, we reverse the two level enhancement and remand for resentencing.

**III. CONCLUSION**

For the reasons we have stated, we affirm Makes Room's conviction. The district court

---

4. The sentencing court might have relied upon unobjected-to portions of the presentence report (*i.e.*, the recitation of offense conduct) as support for the enhancement. However, the recitation of offense conduct does not mention the facts relied upon by the sentencing court.

5. Because the transcripts of these proceedings are not part of the record, we do not decide

whether the sentencing judge could properly rely upon evidence introduced in the course of these proceedings when sentencing Makes Room, nor do we decide what, if any, effect the lack of cross-examination by Makes Room would have on the reliability or admissibility of those proceedings at sentencing.

committed no error when it refused to suppress statements made by Makes Room during custodial interrogation by FBI agents. We also affirm most of the sentencing issues presented by Makes Room. There was no abuse of discretion when the sentencing judge refused to transfer the case to the trial judge for sentencing. The district court did not clearly err in refusing a two level reduction for acceptance of responsibility under § 3E1.1(a), nor did it err in refusing a one level reduction for acceptance of responsibility under § 3E1.1(b)(1).

We reverse the sentence in one respect. We hold that the district court erred in giving a two level enhancement under § 3B1.1(c) for Makes Room's role in the offense. Accordingly, we remand for resentencing.