# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1183

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States District |
| | * | Court for the Southern District of Iowa. |
| Eddie Lee Turner, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 12, 1998

Filed:  September 21, 1998

_____

Before McMILLIAN, ROSS AND MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

ROSS, Circuit Judge.

Eddie Lee Turner appeals from a judgment of the district court[1] entered upon a jury verdict finding him guilty of possession with the intent to distribute crack cocaine

_____

[1]The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

and carrying a firearm during and in relation to a drug trafficking offense, in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 924(c).  We affirm.

In the early morning hours of November 12, 1996, deputy sheriffs Steve Dolezal and Chris Lagenberg saw Turner driving erratically.   They pulled him off the road and asked for his driver's license.  Turner gave Dolezal a piece of paper on which was written a false name and other information.  Dolezal asked Turner if he had been drinking or taking drugs.  Turner denied drinking, but did not reply to the question about drugs.  Dolezal asked Turner to exit  the car and go to the rear.  Turner complied, but was unsteady on his feet.  Meanwhile, police officer Shane Kron searched the car for weapons and saw an unfastened bag on the floor of the passenger side.  Inside the bag, Kron found an unloaded semi-automatic weapon, a loaded clip for the weapon, and a container of crack cocaine.

Deputy sheriff Joseph Lalla arrived at the scene to administer sobriety tests to Turner.  Based on the tests, Lalla believed that Turner was impaired by something other than alcohol.  Lalla arrested Turner, advised him of his Miranda rights,[2] and placed him in a patrol car.  As Lalla was pulling away, Turner stated, "All right.  I'll tell you my real name" and gave Lalla his real name, date of birth and social security number.  When they arrived at the jail, officer Greg Humrichouse conducted tests to determine if Turner was under the influence of drugs.  During the testing, Turner was cooperative and answered questions appropriately.  A urine test showed that Turner had consumed phencyclidine (PCP).

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

-2-

After the testing, detective David Henderson interviewed Turner. Henderson again advised Turner of his <u>Miranda</u> rights, both orally and in writing. Turner signed a waiver form, initialing each admonition. Turner then admitted that he had stolen the crack cocaine and the gun in Kansas City, Missouri, and was going to sell them so he could get money to buy Christmas presents for his daughter. He further stated that the car belonged to a female friend, who later retrieved the car. During the interview, Turner was cooperative.

Following the interview, while in jail, Turner exhibited "bizarre" behavior. On November 20, 1996, Dr. Remi Cadoret, a psychiatrist, examined Turner and diagnosed a psychotic disorder and polysubstance abuse. In March and August 1997, Dr. Mark Souza, another psychiatrist, examined Turner and diagnosed a PCP-induced psychotic disorder.

In July 1997, pursuant to a court-ordered sanity and competency evaluation, Dr. Daniel Greenstein, a forensic psychologist, examined Turner. The doctor reviewed Turner's arrest, jail, and medical records, administered intellectual and psychological tests, and interviewed Turner. The doctor reported that Turner's I.Q. was in the low-average to borderline range, his "verbal comprehension [wa]s stronger than his verbal expressive abilities," and his profile was consistent with that of a malingerer. Although the doctor believed that at the time of Turner's arrest his "functioning was impacted by the influence of PCP," he noted that Turner was able to follow directions, respond appropriately to questions, and was "goal-oriented" in that he stated his intention to sell the crack cocaine and gun for money. Dr. Greenstein opined that at the time of his

arrest Turner "had the ability to appreciate the nature of his actions" and was competent to stand trial.

Before trial, Turner filed a motion to suppress, asserting, among other things, that his admission of his name to Lalla and his confession to Henderson violated his <u>Miranda</u> rights. As to his confession, Turner argued that he did not have the mental capacity to voluntarily and knowingly waive his rights. At a suppression hearing, Turner presented several witnesses, including Dr. Souza, who testified that because of a low I.Q. and PCP use, Turner "was incapable of forming an intelligent and knowing waiver of his <u>Miranda</u> rights." Although the doctor diagnosed that Turner suffered from a PCP-induced psychosis, the doctor admitted that at the time of Turner's arrest, he might have only been intoxicated by PCP. On cross-examination, Dr. Souza admitted that a person intoxicated by PCP might understand verbal and written communication.

The district court rejected Turner's arguments.[3] As to the admission to Lalla, the court found that it was spontaneous and not a result of interrogation. As to the confession, after considering the evidence of Turner's mental status and finding "[n]othing about the police questioning was improper or in any way coercive," the court concluded that the waiver was valid, citing <u>Colorado v. Connelly</u>, 479 U.S. 157, 167 (1986).

---

[3]Although the court refused to suppress Turner's admission of his name to Lalla and confession to Henderson, it suppressed other statements.

On appeal Turner argues the district court erred in rejecting his claim that he validly waived his <u>Miranda</u> rights before he confessed to Henderson. Although "[w]e accept the district court's factual findings unless they are clearly erroneous[,] [w]e review the ultimate determination that the accused knowingly and voluntarily waived these rights de novo." <u>United States v. Makes Room For Them</u>, 49 F.3d 410, 414 (8th Cir. 1995).

In this case, the government responds that because Turner does not contest the district court's finding of no police coercion, this court need not address Turner's arguments concerning the validity of his waiver. We disagree. It is true, as the government notes, that in <u>Connelly</u>, 479 U.S. at 167, the Supreme Court held "that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" However, later that term, in <u>Colorado v. Spring</u>, 479 U.S. 564 (1987), the Supreme Court made clear that validity of a <u>Miranda</u> waiver has "'two distinct dimensions'" -- whether the waiver is voluntary and whether it is knowing and intelligent. <u>Id.</u> at 573 (quoting <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986)).

This court has recently described the "two distinct dimensions" of the inquiry into the validity of a <u>Miranda</u> waiver. <u>United States v. Jones</u>, 23 F.3d 1307 (8th Cir. 1994).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

Id. at 1313 (quoting Moran, 475 U.S. at 421). "We read Connelly, therefore, as holding only that police coercion is a necessary prerequisite to a determination that a waiver was involuntary and not as bearing on the separate question whether the waiver was knowing and intelligent." United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991); see also Derrick v. Peterson, 924 F.2d 813, 820 (9th Cir. 1990) ("[w]hatever doubt remained after Connelly concerning the distinct nature of the knowing and intelligent prong of the waiver inquiry was removed by the Court's decision in Colorado v. Spring"), cert. denied, 502 U.S. 853 (1991); Miller v. Dugger, 838 F.2d 1530, 1539 (11th Cir.) (Connelly did not "demonstrat[e] an intent by the Supreme Court to eliminate this distinction between voluntariness and knowing waivers"), cert. denied, 486 U.S. 1061 (1988).[4]

We thus address, but reject, Turner's argument that his waiver was not knowing and intelligent because he was impaired by a low I.Q., PCP intoxication, and mental illness. As to his intelligence, although Turner's I.Q. was in the low-average to borderline range, he was "clearly intelligent enough to understand his rights." Makes Room, 49 F.3d at 414. Henderson testified that Turner was cooperative, reviewed and initialed each admonition of the waiver form, agreed to answer questions, and gave

---

[4]In Rice v. Cooper, 148 F.3d 747, 751 (7th Cir. 1998), the Seventh Circuit acknowledged that "cases hold that a distinction must be made between an unknowing waiver, invalid even if not the result of any police misconduct, and an involuntary waiver, invalid only if it is the result of such misconduct." Although the court believed the distinction was unsatisfactory, it did not pursue the matter further, because in the case at bar there was no evidence of police coercion or that the defendant, who was a mildly retarded 16 year-old, lacked the capacity to make a knowing waiver of his Miranda rights. Id. at 752.

accurate information, including the name and telephone number of the owner of the car. See Henderson v. De Tella, 97 F.3d 942, 948 (7th Cir. 1996) (despite "below-average I.Q. and limited reading abilities" defendant's conduct showed he "was able to comprehend what his rights were and to waive them knowingly and voluntarily"), cert. denied, 117 S. Ct. 1471 (1997). In addition, as the government notes, at the time he was stopped, Turner acted in a manner more consistent with a person attempting to avoid being caught than a person who did not know what he was doing. For example, Turner denied consuming alcohol, but refused to answer questions about drugs and gave a false name.

As to PCP intoxication, we "decline[] to adopt a per se rule . . . when confronted with intoxication." Makes Room, 49 F.3d at 415. Even if Turner was intoxicated by PCP at the time of his confession, as just discussed, the evidence shows that he understood his rights and knowingly waived them. Cf. United States v. Byrne, 83 F.3d 984, 989 (8th Cir. 1996) (despite evidence that defendant had taken drugs, behavior showed waiver was voluntary). In addition, although Turner later exhibited "bizarre" behavior and may have exhibited signs of mental illness, the change in behavior does not show that at the time of his confession he lacked the mental capacity to waive his rights.

We also reject Turner's argument that the district court erred in holding that his statement to Lalla was spontaneous and not a product of interrogation. While Turner was in custody when he made the statement, "not all statements made while in custody are products of interrogation." United States v. Hatten, 68 F.3d 257, 262 (8th Cir. 1995), cert. denied, 516 U.S. 1150 (1996). "'Interrogation' is 'express questioning,' or

words or actions 'that the police should know are reasonably likely to elicit an incriminating response . . ..'" Id. at 261 (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)).  Thus, "[w]e have repeatedly held that '[a] voluntary statement made by a suspect, not in response to interrogation, is not barred . . . and is admissible with or without the giving of Miranda warnings.'" Id. at 262 (quoting Innis, 446 U.S. at  299). Here, as the district court found, Turner's statement was "both voluntary and volunteered, and not the product of police interrogation." Id.  Lalla testified that as he "had pulled out and started down the road . . . [Turner] told me, 'All right.  I'll tell you my real name' just out of the blue." See United States v. Waloke, 962 F.2d 824, 829 (8th Cir. 1992) (defendant's statements during ride to police station were spontaneous and not product of interrogation).  In any event, even if we were to find error, any error would be harmless.

Turner next challenges the sufficiency of the evidence supporting his section 924(c) conviction for carrying a firearm during and in relation to a drug trafficking offense.  "'In reviewing the sufficiency of the evidence to support a guilty verdict, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict.'" United States v. Davis, No. 97-1181, 1998 WL 484667, at *12 (8th Cir. Aug. 19, 1998) (quoting United States v. Plenty Arrows, 946 F.2d 62, 64 (8th Cir. 1991)).  "'The evidence need not exclude every reasonable hypothesis except guilt.'" United States v. Baker, 98 F.3d 330, 338 (8th Cir. 1996) (quoting United States v. Erdman, 953 F.2d 387, 389 (8th Cir.), cert denied,

505 U.S. 1211 (1992)), cert. denied, 117 S. Ct. 1456 (1997).[5]  "'If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction.'"  Id. (quoting United States v. Burks, 934 F.2d 148, 151 (8th Cir. 1991)).

In Muscarello v. United States, 118 S. Ct. 1911, 1919 (1998), the Supreme Court held that the word "carry" in section 924(c) "includes the carrying of a firearm in a vehicle."  Thus, there is no "question that [Turner] carried the [firearm] within the meaning of the statute."  Davis, 1998 WL 484667, at *13.  "However, it is not enough that [Turner] carried a firearm; the firearm must be carried 'during and in relation to 'a drug trafficking crime."  Id. (citing 18 U.S.C. § 924(c)(1)).  "The Supreme Court explained in Smith v. United States, 508 U.S. 223 (1993) that the phrase 'in relation to' is expansive but that, at a minimum, 'the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.'"  Id. at *14 (quoting Smith, 508 U.S. at 237-38).  Here, the firearm was found grip up with the crack cocaine in an unfastened bag within arm's reach of Turner.  Although Turner maintains that "his carrying the firearm was entirely 'incidental' to the crime[,]" a jury could reasonably "infer the gun served to facilitate the

---

[5]Instead of following Baker, Turner asks this panel to follow United States v. Davis, 103 F.3d 660, 667 (8th Cir. 1996) (internal quotation omitted), cert. denied, 117 S. Ct. 2424 (1997), in which this court stated that "where the government's evidence is equally strong to infer innocence as to infer guilt, the verdict must be one of not guilty."  As Turner notes, Baker and Davis appear to be in conflict.  Although we may not overrule Davis, "[w]e are, however, free to choose which line of cases to follow."  Kostelec v. State Farm Fire & Cas. Co., 64 F.3d 1220, 1228 n.8 (8th Cir. 1995).  We choose to follow Baker.  See United States v. Saborit, 967 F. Supp. 1136, 1140-41 (N.D. Iowa 1997) (questioning Davis's validity and noting in past ten years this court has overwhelmingly followed Baker standard).

[drug trafficking offense] by protecting not only [Turner], but also the drugs." United States v. Williams, 104 F.3d 213, 215 (8th Cir. 1997). In addition, as the government notes, the jury could have inferred that the sale of the crack cocaine would have been facilitated if the firearm was part of the sale.

Contrary to Turner's argument on appeal, the fact that the firearm was unloaded "does not insulate [him] from the reach of section 924(c)(1)." United States v. Salazar, 66 F.3d 723, 728 (5th Cir. 1995) (internal quotation omitted); see also United States v. Thomas, 964 F.2d 836, 838 (8th Cir.) (presence of unloaded gun and clip in car permitted inference that "gun's availability facilitated the carrying out of the drug-trafficking crime") (internal quotation omitted), cert. denied, 506 U.S. 893 (1992). In this case, a loaded clip was found inside the bag containing the firearm and the evidence was that the firearm could have been loaded and fired in a matter of seconds.[6] In addition, even if Turner intended to sell the gun, as he claimed, "facilitation of the [drug-trafficking] crime need not be the defendant's sole purpose for possessing the weapon." United States v. Castro-Lara, 970 F.2d 976, 983 (1st Cir. 1992), cert. denied, 508 U.S. 962 (1993). Because Turner's conviction is not against the weight of the evidence, we also hold that the district court did not abuse its discretion in denying his motion for a new trial.

---

[6]We note that the Ninth Circuit, in holding that section 924(c) applies to unloaded weapons, indicated that even an unloaded firearm could "have the same effect on victims and observers when pointed or displayed, tending to intimidate, and also increase the risk of violence by others who may respond to the perceived danger represented by the (presumably) loaded gun." United States v. Hunter, 101 F.2d 82, 86 (9th Cir. 1996) (internal quotation omitted), cert. denied, 117 S. Ct. 1285 (1997).

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT