# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1552

_____

| | |
|---|---|
| Michael Holman, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the Western |
| | * District of Missouri. |
| Mike Kemna, Superintendent, | * |
| | * |
| Appellee. | * |

_____

Submitted: December 14, 1999

Filed: May 5, 2000

_____

Before BEAM and HEANEY, Circuit Judges, and KYLE,[1] District Judge.

_____

BEAM, Circuit Judge.

Michael Holman, appeals from the district court's[2] denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254.   We affirm.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

## I.    BACKGROUND

Holman was charged in Missouri state court with first-degree murder and armed criminal action in connection with the shooting death of William Stufflebean, Jr. Prior to trial, he moved to suppress a confession made to Daviess County, Missouri, Deputy Bill Wright, on the grounds that the confession was obtained in violation of his Fifth Amendment right to counsel as a component of the privilege against self-incrimination, and his Sixth Amendment right to counsel. Following an evidentiary hearing on the matter, the trial court denied the motion to suppress. Holman was subsequently found guilty by a jury. He was sentenced to life imprisonment without eligibility for parole on the murder charge and life imprisonment on the armed criminal action charge, the sentences to be served consecutively. The Missouri Court of Appeals affirmed Holman's conviction as well as the trial court's denial of post-conviction relief. See State v. Holman, 965 S.W.2d 464 (Mo. Ct. App. 1998) (Holman). Following the denial of his application for transfer to the Supreme Court of Missouri, Holman commenced this section 2254 petition for a writ of habeas corpus in federal district court. The district court denied the writ, but granted a certificate of appealability on the sole issue of whether Holman "effectively waived his federal constitutional rights" at the time of his confession.

The confession at issue was obtained during a meeting between Holman and Wright on the morning of October 24, 1993, at the Livingston County Jail where Holman was being held until trial. Wright's visit to the prison took place after Holman had telephoned his stepfather, Bernie Gayle Cabra, twice–the night before and again that morning–asking him to summon Wright to the prison to take Holman's confession. Upon arriving at the prison, Wright met with Holman in an interview room. According to testimony given at trial by a jailer present during much of the encounter, Wright gave Holman his Miranda rights and then obtained a written waiver of those rights. Wright then proceeded to tape record an interview in which Holman confessed how he, Melissa Stufflebean (Holman's girlfriend and the victim's wife), and Randy Asher

(Melissa Stufflebean's brother), had planned to kill William Stufflebean. Following the interview, Holman was left alone in the room with blank statement forms on which he provided a written account detailing the events leading to William Stufflebean's murder. Both the recorded interview and the written confession were admitted at trial.

Holman concedes that he asked Cabra to tell Wright to come to the prison on the morning of October 24. However, he asserts that the contacting of Wright and his subsequent waiver of rights were precipitated by the fact that on the *prior* day, Wright had visited Holman, without contacting Holman's attorney, and informed him that Melissa Stufflebean had confessed and implicated Holman in William Stufflebean's murder. Thus, Holman asserts, admission of his confession violates his Fifth and Sixth Amendment rights to counsel.

The Missouri Court of Appeals, rejected Holman's argument, finding that there was no evidence that Wright had initiated conversation with Holman on October 23. It noted that the trial court had heard evidence that Holman had requested jail officials to send any law enforcement officers who might appear at the jail to see him. See Holman, 965 S.W.2d at 468. The court concluded that "[t]he evidence supports an inference that Holman wanted to talk to Wright or any other officer . . . and initiated the conversation with Wright on October 23." Id. In denying Holman's section 2254 petition, the district court did not focus on the issue of who initiated the contact on October 23, but rather found that Holman's decision to contact Wright the next day was voluntary and sufficient to waive his Fifth and Sixth Amendment rights. See Holman v. Kemna, No. 98-0650-CV-W-6-P, slip op. at 6-7 (W.D. Mo. Dec. 22, 1998). Holman appeals.

## II. DISCUSSION

In determining whether to grant habeas corpus relief, we review whether the state conviction "was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). State court findings of fact are generally presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). We review the district court's findings of fact for clear error and its conclusions of law de novo. See Richardson v. Bowersox, 188 F.3d 973, 977 (8th Cir. 1999), petition for cert. filed, (U.S. Mar. 2, 2000) (No. 99-8506).

In Edwards v. Arizona, a Fifth Amendment case, the Supreme Court held that once a defendant expresses a desire to deal with the police only through counsel, the police may not further interrogate the defendant until "counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversation with the police." 451 U.S. 477, 484-85 (1981). The Court also held that once the defendant has invoked the right to counsel, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." Id. at 484. The purpose behind the prophylactic rule announced in Edwards is to prevent police from badgering a defendant into waiving his previously asserted Miranda rights. See Michigan v. Harvey, 494 U.S. 344, 350 (1990). In Michigan v. Jackson, 475 U.S. 625 (1986), the Court extended the Edwards rule to the Sixth Amendment context.

Neither side disputes that at the point when Wright visited Holman in his cell on October 23, Holman had invoked his right to counsel for purposes of both his Fifth and Sixth Amendment rights. Therefore the next question is whether the meeting that day constituted "police-initiated custodial interrogation" in contravention of Edwards

and Jackson, so as to render invalid Holman's subsequent contact of Wright and waiver of rights.

As noted earlier, the Missouri Court of Appeals found that Holman, himself, had initiated conversation with Wright on October 23 because the record indicated that Holman had previously requested jail officials to send any law enforcement officers from Daviess County who might appear at the jail to see him. Holman asserts that the record does not support such an inference.

Initiation by a defendant occurs when the defendant evinces "a willingness and a desire for a generalized discussion about the investigation." Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983). Although this Circuit has not settled on the proper standard of review to be applied to a state court determination of initiation, we now hold that, although we apply the section 2254 presumption of correctness to the facts that the state court found, whether those facts constitute an "initiation" under Edwards is a legal question requiring de novo review. See Bannister v. Delo, 100 F.3d 610, 620 n.9 (8th Cir. 1996); United States v. Whaley 13 F.3d 963, 968 (6th Cir. 1994). We do not believe the facts found by the state court support its legal conclusion that Holman initiated conversation with Wright on October 23. The testimony by Livingston County jailers at the motion to suppress hearing indicates that although Holman made sporadic requests to see Daviess County enforcement officers and even briefly met with Wright once, there is no indication as to when these events took place nor their subject matter. We also note that both in its brief to the Missouri Court of Appeals and to this court, the government expressly states that Wright made the initial contact with Holman. See Postscript Enter. v. City of Bridgeton, 905 F.2d 223, 227-28 (8th Cir. 1990) (treating statements by parties made in briefs as judicial admission); Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) (noting that a court can appropriately treat statements in briefs as binding judicial admissions of fact). In short, we find that the state court's determination that Holman initiated contact with Wright on October 23 involved an

"unreasonable application" of clearly established federal law, as determined by the Supreme Court of the United States. See 28 U.S.C. § 2254(d)(1); Williams v. Taylor, 120 S. Ct. 1495, 1520-23 (2000).

Although we disagree with the state court's determination of this issue, we nevertheless find that the record supports its ultimate conclusion that Holman effectively waived his constitutional rights because the sequence of events following Wright's initiation of contact with Holman on October 23, establishes that there was no Edwards violation and that Holman's subsequent waiver was knowing and voluntary. See Cooksey v. Delo, 94 F.3d 1214, 1218 (8th Cir. 1996) (court of appeals conducting habeas review may affirm a judgment on any basis supported by the record).

As noted earlier, under Edwards, once a defendant has invoked the right to counsel, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." Edwards, 451 U.S. at 484. Because the district court erroneously concluded that Holman had initiated contact with Wright, it did not proceed to consider whether he had been subjected to custodial interrogation. Thus, we now turn to the question of whether Holman was subjected to custodial interrogation during the October 23 meeting. Although, we find that Holman was clearly in a custodial situation at the time of the October 23 meeting, the question of whether he was subject to interrogation at that time is more difficult. See United States v. Bautista, 145 F.3d 1140, 1147 (10th Cir.) (to implicate the Miranda-Edwards right to counsel prophylaxis, both a custodial situation and official interrogation are required), cert. denied, Bautista v. United States, 525 U.S. 911 (1998).

Interrogation refers not only to express questioning but also to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the suspect. See Rhode Island v. Innis, 446 U.S.

291, 301 (1980). Interrogation must also reflect a measure of compulsion above and beyond that inherent in custody itself. See id. at 300. Thus, not all statements made while in custody are the product of interrogation. See United States v. Hatten, 68 F.3d 257, 262 (8th Cir. 1995). In determining whether a statement is the product of interrogation, the focus is on Holman's perceptions of Wright's behavior at the time the conversation took place. See Boykin v. Leapley, 28 F.3d 788, 792 (8th Cir. 1994).

Our difficulty in determining whether Holman was subject to interrogation stems primarily from the factual ambiguity in the record as to what transpired during the October 23 meeting. This ambiguity, in turn, is due to the fact that neither Holman nor Wright testified at the motion to suppress hearing.[3] Thus, the only insight we have as to the content of the conversation that took place between Holman and Wright is to be gleaned from Cabra's testimony as to what Holman told him when he telephoned Cabra on the night of the 23rd and again on the morning of the 24th. According to Cabra, Holman indicated that he had learned from Wright that Melissa Stufflebean had given a statement implicating Holman in the murder and therefore he wanted to confess. Although, Holman may have indeed received such information from Wright that night, the record is silent as to the sequence of events that led to Wright's divulging this information. There is no evidence indicating whether Wright went to Holman's cell that night with a signed confession from Melissa Stufflebean[4] or with the express purpose of telling Holman that his girlfriend had implicated him. Cf. United States v. Withorn, 204 F.3d 790, 796 (8th Cir. 2000). In short, there is nothing in the record which reveals the nature of the conversation that took place between Holman and Wright on October 23 or how it came about. However, in light of the testimony given at the

---

[3]Wright died before the hearing took place.

[4]The record shows that Wright had brought Melissa Stufflebean to the Livingston County Jail that day from Oklahoma, where she had been living with her parents, and that he had obtained a confession from her.

motion to suppress hearing,[5] we are inclined to construe the ambiguity in the record in favor of Holman, and conclude that Holman was subject to interrogation during the October 23 meeting.

However, despite our finding that Holman was subject to police-initiated custodial interrogation on October 23, after having invoked his right to counsel, we are still unable to conclude that the admission of the confession obtained the next day violated his Fifth and Sixth Amendment rights. Other circuits have noted that various factors such as a break in custody or a lapse in time may vitiate the coercive effect of an impermissible interrogation so that the admission of subsequent statements is not barred by the Edwards rule. See Hill v. Brigano, 199 F.3d 833, 842 (6th Cir. 1999) (lapse in time), petition for cert. filed, (U.S. Mar. 21, 2000) (No. 99-8773); United States v. Gomez, 927 F.2d 1530, 1539 n. 8 (11th Cir. 1991) (same); Dunkins v. Thigpen, 854 F.2d 394, 397 (11th Cir. 1988) (break in custody dissolves a defendant's Edwards claim); McFadden v. Garraghty, 820 F.2d 654, 661 (4th Cir. 1987) (same). We do not believe these circumstances to be exhaustive and think that other scenarios may also militate against the finding of an Edwards violation. We believe this is such a case.

First, we note again, that it is a close question whether Holman was even subject to interrogation on October 23, let alone any mode of interrogation that would have been overtly coercive. Second, when Wright left Holman's cell that night, Holman had

_____

[5]In addition to Cabra's testimony, there was also testimony at the motion to suppress hearing from Sheriff Houghton of Daviess County, that Houghton talked to Wright on October 23 after Wright's visit to Holman's cell. Although Houghton was not allowed to testify as to what Wright told him on hearsay grounds, the trial court did receive Houghton's statement to Wright. According to this testimony, Houghton told Wright that Wright had not initiated the conversation with Holman because Holman had insisted on talking with him, and, therefore, Wright could go back the next day and take a statement from Holman if Holman changed his mind.

not made any statement, thus reducing the likelihood that he was under any compulsion to confess. Third, Holman had the chance to speak with his stepfather on October 23 who urged Holman to wait until they were able to contact Holman's attorney and to sleep on his decision. Although, Holman and Cabra were unsuccessful in their attempts to contact Holman's attorney, it was Holman's decision not to wait any longer in speaking to Wright. Cf. Colorado v. Connelly, 479 U.S. 157, 170 (1986) ("voluntariness . . . has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word"). In short, we believe that the facts of this case do not warrant a finding that Holman's subsequent contact of Wright was rendered invalid under Edwards. See Brigano, 199 F.3d at 842 (holding that defendant's statement was not barred by Edwards, despite impermissible interrogation the night before, because defendant had night alone in cell and defendant was aware of his right to have an attorney). Cf Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1989) (finding defendant's next day confession not to be product of earlier interrogation when defendant himself renewed contact with deputy following a night in jail and when defendant, despite already having made a statement the previous day, was not under great pressure from authorities to say anything more).

Our conclusion that Holman's subsequent contact with Wright was not invalid under Edwards, does not end the analysis. We must next determine whether subsequent events indicate a valid waiver of Holman's right to counsel. See Oregon, 462 U.S. at 1044-45. Inquiry into the validity of a waiver has two distinct dimensions–whether the waiver is voluntary and whether it is knowing and intelligent. See United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998). A waiver is voluntary if it is the product of a free and deliberate choice rather than intimidation, coercion, or deception. See id. A waiver is knowing and intelligent if it has been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. See id. The burden of proving that a defendant has knowingly and voluntarily waived his right to have counsel present at an interrogation rests with the government. See United States v. Eagle Elk, Jr., 711 F.2d 80, 82 (8th Cir. 1983).

The Missouri Court of Appeals found that the state met its burden. Specifically, it found that:

> When Wright took Holman's confession on October 24, he advised Holman several times before beginning the conversation and again before taking Holman's confession of his right to have his attorney present and his right to remain silent. Holman assured Wright each time that he wanted to waive his rights. Cabra had admonished Holman to talk to his attorney and to think about what he was doing before summoning Wright. Holman assured Cabra that he wanted to waive his rights. By a preponderance of the evidence, Holman . . . validly waived his right to have his attorney present before giving his confession to Wright.

Holman, 965 S.W.2d at 468.

Having reviewed the record, we have no reason to dispute these conclusions. Nevertheless, we pause to consider in further detail, Holman's contention that the state court erred in finding that his waiver was voluntary. Specifically, Holman asserts that as a result of Wright's overreaching on October 23 in informing him about Melissa Stufflebean's confession, he became hysterical and was inexorably led to contact Wright and to waive his rights. Holman also claims that the fact that he and his stepfather unsuccessfully tried to reach his attorney indicates that his waiver of counsel was far from voluntary.

Whether a waiver is voluntary is a legal question requiring de novo review, although subsidiary factual determinations are entitled the 28 U.S.C. § 2254(d) presumption of correctness. See United States v. Makes Room, 49 F.3d 410, 414 (8th Cir. 1995). In determining the voluntariness of Holman's waiver, we consider the totality of the circumstances. See Colorado v. Spring, 479 U.S. 564, 573 (1987). To establish that a waiver is involuntary, there must be evidence that Holman's will was

-10-

overborne and his capacity for self-determination critically impaired, because of coercive police conduct.  See id. at 574.

Our review of the totality of the circumstances does not show this to be the case. Although, Holman may have been hysterical upon having learned of his girlfriend's confession, this alone does not render his waiver involuntary.  See Reese v. Delo, 94 F.3d 1177, 1184 (8th Cir. 1996) (holding that mental impairments alone do not render a defendant's statement involuntary); Makes Room, 49 F.3d at 415 (declining to find per se rule of involuntariness when defendant is fatigued or intoxicated).  "There must also be coercive police activity."  Reese , 94 F.3d at 1184.  The only evidence of police coercion asserted by Holman is Wright's visit on the 23rd to inform him of Melissa Stufflebean's confession.  Again, as our earlier discussion indicates, we do not think the totality of the circumstances surrounding this encounter rises to the requisite level for a finding of coercion.

Because Holman's subsequent contact of Wright was valid under Edwards and its progeny and because subsequent events also indicate a valid waiver of Holman's Fifth and Sixth Amendment rights, we find Holman's confession to be admissible.  We therefore affirm the decision of the district court denying the writ of habeas corpus.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent.  The defendant  was unconstitutionally interrogated prior to confessing, and nothing transpired between the impermissible interrogation and the subsequent confession that broke the causal link between the two.  The tainted confession thus should not have been admitted at the defendant's trial, and to do so was reversible error.

On October 23, 1993, Michael Holman was being held in the Livingston County Jail.  He had previously invoked his rights to remain silent and to counsel.

-11-

Accordingly, all interrogation by law enforcement should have ended. See Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). However, Deputy Bill Wright approached Holman while he was still in custody and advised him that his lover had implicated him in William Stufflebean's murder.

I agree with the majority that Wright's conduct constituted an Edwards violation, because he reinitiated the interrogation of Holman after Holman had asserted his rights to remain silent and to counsel. See id.; see also Rhode Island v. Innis, 446 U.S. 291, 301 (1980) ("A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect . . . amounts to interrogation."); Brewer v. Williams, 430 U.S. 387, 399-400 (1977) (holding detective's statements to religious suspect that victim could not receive proper Christian burial until body was found was tantamount to interrogation despite absence of direct questioning). In my view, whether there was an interrogation here is not even a close question. Wright clearly expected to elicit a response from Holman by presenting Holman with his lover's incriminating statement. Indeed, it is hard to imagine any reason, other than to get Holman to talk, that Wright would have for presenting Holman with this statement. Thus, Wright's conduct violated Edwards.

The issue, then, is whether the coercive effects of the violation were dispelled by the time Holman confessed. To me, the inquiry is relatively simple: whether the confession was the product of an unconstitutional interrogation. I consider the totality of circumstances in making this determination. Cf. Oregon v. Elstad, 470 U.S. 298, 310, 318 (1985) (holding that in deciding whether defendant's second confession is product of coerced first confession, courts should inquire into relevant circumstances evincing break in causal link between initial involuntary confession and subsequent confession; such circumstances include passage of time, change in venue, change in interrogators, and use of Miranda[6] warnings).

---

[6]Miranda v. Arizona, 384 U.S. 436 (1966).

-12-

Such an analysis in this case leads me to conclude that Holman's confession was the result of Wright's unconstitutional interrogation. After Wright told Holman that he had been implicated by his lover, Holman called his stepfather, who testified that Holman was hysterical, and immediately wanted to confess "as a result of what [Wright] had told him." (Appellant's App. at 39.) Acting on his stepfather's advice, Holman waited until the next day, when he again called his stepfather and asked that Wright be summoned back to the jail. When Wright arrived, Holman was brought to an interview room at the jail, where he waived his <u>Miranda</u> rights and confessed.

Only two facts support the majority's conclusion, neither of which are singularly dispositive, nor do they together outweigh the other evidence that Holman's confession was infected by the earlier unconstitutional interrogation. The first is the lapse of time. Evaluating all pertinent facts, the lapse in time between Wright's interrogation and Holman's confession did not purge the taint of the unconstitutional conduct. <u>See</u> <u>United States v. Barone</u>, 968 F.2d 1378, 1385 (1st Cir. 1992) (holding lapse in time of twenty-four hours did not preclude relief where other facts established that defendant's confession was still product of earlier unconstitutional interrogation). The exact length of time that elapsed between Wright's interrogation and Holman's confession is unclear, but it certainly was less than twenty-four hours. His only reason for waiting that long apparently was his stepfather's advice. During that time, Holman remained in jail. He did not change locations. He was unable to contact his attorney. There is no evidence, in fact, that Holman had anything to do *except* mull over his lover's confession until the next morning when he confessed to the same deputy who had unconstitutionally interrogated him the previous day. Moreover, Holman stated that he wanted to confess *as a result* of Wright's impermissible interrogation. Substantial evidence reflects that, despite the lapse in time, Holman's confession was the product of Wright's interrogation.

The second fact supporting the majority's position is Holman's waiver of his <u>Miranda</u> rights. However, Holman's subsequent <u>Miranda</u> waiver could not vitiate

-13-

Wright's earlier impermissible interrogation. Of course, standing alone a subsequent Miranda waiver cannot cure an earlier violation. See Edwards, 451 U.S. at 481-84; see also United States v. Lee, 699 F.2d 466, 468 (9th Cir. 1982) ("The circumstances surrounding a prior illegal confession may in some cases carry over and taint a subsequent confession . . . even if the accused has been advised of his Miranda rights prior to the second confession."); Desire v. Attorney General, 969 F.2d 802, 805 (9th Cir. 1992) (holding Edwards violation not cured by reading of Miranda rights before defendant confessed). While Holman's Miranda waiver is certainly a factor to consider, it does not permit us to overlook powerful evidence indicating that Holman's confession was the product of Wright's interrogation.

To support its view that Holman's confession was not brought about by the unconstitutional interrogation, the majority notes that Holman did not immediately blurt out a confession upon being presented with his lover's statement. This fact cannot be considered in isolation. Other evidence suggests that Holman did not immediately confess because he was overtaken by hysteria at the realization that his lover had incriminated him.[7] Accordingly, the causal link between Wright's impermissible interrogation and Holman's subsequent confession was not broken. Thus, Holman's confession was tainted by unconstitutional conduct and therefore inadmissible.

Although other evidence linked Holman to the crime, his confession was the most persuasive evidence on the charge of first-degree murder. See Arizona v. Fulminante, 499 U.S. 279, 296 (1990) ("[A] full confession in which the defendant discloses the motive for and the means of the crime may tempt the jury to rely upon that evidence alone in reaching its decision.") Because the admission of Holman's confession was not harmless beyond a reasonable doubt, he is entitled to a new trial.

---

[7]Holman's stepfather described Holman's state of mind during their October 23 telephone conversation following Wright's interrogation as "pretty hysterical." (Appellant's App. at 32).

Accordingly, I would grant the writ, and respectfully dissent.

A true copy.

Attest:

      CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.