# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00788-CR

**Richard Goodwin, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-10-904055, HONORABLE CHARLES F. BAIRD, JUDGE PRESIDING

## O P I N I O N

Appellant Richard Goodwin, a civilly committed sexually violent predator, was convicted by a trial court of violating the terms of his civil commitment. *See* Tex. Health & Safety Code Ann. § 841.085 (West 2010). The court sentenced Goodwin to six years' imprisonment, probated to community supervision for two years. On appeal, Goodwin claims that (1) the evidence is insufficient to support his conviction and (2) the trial court erred in denying his motion to suppress the evidence obtained during his unlawful detention. We affirm the judgment of the trial court.

## BACKGROUND

In 1988, Goodwin was convicted of indecency with a child by exposure. *See* Tex. Penal Code Ann. § 21.11(a)(2)(A) (West 2011).[1] He was convicted again in 1990 on two counts of

---

[1] We cite to the current versions of the statutes for convenience because there have been no intervening amendments that are material to our disposition of this appeal.

aggravated sexual assault of a child, and again in 1995 for indecency with a child by exposure. *See id.* §§ 21.11(a)(2)(A), 22.01(a)(1)(B) (West 2011). Goodwin served ten years in prison for his final conviction, and was scheduled to be released in 2005.

In October of 2005, a trial court found that Goodwin was a "sexually violent predator," based on his previous convictions for sexually violent offenses and his continued "suffer[ing] from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence."[2] *See* Tex. Health & Safety Code Ann. § 841.003(a) (West 2010). As a sexually violent predator, Goodwin was civilly committed for outpatient treatment and supervision until such time as his "behavioral abnormality has changed to the extent that [he] is no longer likely to engage in a predatory act of sexual violence." *See id.* § 841.081(a) (West 2010). The terms of Goodwin's civil commitment require him to "reside in a Texas residential facility" and comply with all written requirements imposed by the Council for Sex Offender Treatment ("CSOT"). *See id.* § 841.082(a)(1)–(4) (West 2010). Any violation of the terms of his civil commitment is a third-degree felony. *See id.* § 841.085 (West 2010).

Goodwin was originally placed in the Ben Reed Halfway House in Harris County (the "Harris County facility"). The Harris County facility allowed Goodwin to live near his remaining family and he was permitted to leave the premises, provided he always wore a GPS tracker. On October 9, 2009, CSOT transferred Goodwin from the Harris County facility to the work release building of the Travis County Correctional Facility (the "Travis County facility"). The Travis County

---

[2] The facts recited herein are taken from testimony and exhibits admitted at the pretrial hearing and the bench trial.

facility was under contract with the State to house civil committees as well as pre-release parolees who were kept separate from the general population of the jail. In the Travis County facility, the civil committees were permitted some personal items and could leave the premises provided they wore GPS monitoring devices.

When he arrived at the Travis County facility, Myra Stoddard, a CSOT employee, informed Goodwin of CSOT's supervision requirements for sexually violent predators (the "CSOT requirements"). The CSOT requirements were the same for all civilly committed sexually violent predators, and provided, in relevant part:

> [a] I shall not unlawfully own, possess, use, sell nor have under my control any firearm, prohibited weapon or illegal weapon as defined in the Texas Penal Code. Further, I shall not own, possess or use any tool, implement, or object to cause or threaten to cause injury to myself or other persons.
>
> . . . .
>
> [b] In the event that I am placed in or allowed to reside in a community residential facility (halfway house), I agree to abide by the rules, regulations and policies of the facility.

Goodwin acknowledged that he understood the CSOT requirements and signed an agreement to abide by their terms.

On January 17, 2010, corrections officers performed a random, "shakedown" search of the entire Travis County facility, including Goodwin's bunk and locker. The officers discovered three razorblades in Goodwin's belongings; one was hidden within some legal papers, another was in an empty soup packet inside Goodwin's locker, and the third was attached to a

3

magnet and concealed under Goodwin's locker. The Travis County facility's rules prohibited all residents, including civil committees, from possessing razorblades. When the guards questioned him about the razorblades, Goodwin initially claimed that he was allowed to possess them, but subsequently denied that the razorblades were his. Goodwin was indicted for violating the terms of his civil commitment based on his possession of the razorblades because (a) they were objects that threaten to cause injury to himself or others and (b) they constituted a violation of the Travis County facility's rules.

Prior to trial, Goodwin filed a petition for writ of habeas corpus. *See* Tex. Code Crim. Proc. Ann. art. 11.08 (West 2005). In his petition, Goodwin alleged that he was being unlawfully detained in the Travis County facility because (1) his transfer to the Travis County facility without notice, opportunity to object, or judicial review violated his right to due process and (2) the Travis County facility is not a "residential facility" in which he could be lawfully placed. *See* U.S. Const. amend. 14 § 1; *see also* Tex. Health & Safety Code Ann. § 841.082(a)(1) (noting that sexual predators shall reside in "residential facilities . . . or at another location or facility approved by [CSOT]"). Goodwin also filed a motion to suppress the evidence obtained during the search of his locker as fruit of his unlawful detention. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

At the bench trial, after the close of evidence, the trial court granted Goodwin's petition for habeas corpus, finding that CSOT's transfer of Goodwin from Harris County to Travis County "in the middle of the night . . . without [Goodwin] having some say" violated due process. However, the court denied Goodwin's motion to suppress, finding that "the illegality of the confinement, i.e., the location of [Goodwin's] confinement, is [not] the illegality that was meant to

4

be addressed" by the exclusionary rule. *See id.* (codifying "exclusionary rule" which prohibits admission of unlawfully obtained evidence).

The trial court found that the evidence was insufficient to prove beyond a reasonable doubt that the razorblade that was hidden under Goodwin's locker actually belonged to Goodwin. However, the court found that the State had proven beyond a reasonable doubt that the other two razorblades belonged to Goodwin, and therefore convicted him of violating the terms of his community supervision "as alleged in the indictment." *See* Tex. Health & Safety Code Ann. § 841.085. The trial court sentenced Goodwin to six years' imprisonment, probated to community supervision for two years. The State did not appeal the trial court's grant of Goodwin's writ of habeas corpus. *See* Tex. Code Crim. Proc. Ann. art. 44.01(k) (West 2007) (giving State right to appeal grant of writ of habeas corpus); Tex. R. App. P. 26.2(b) (requiring State to file appeal within twenty days of order, ruling, or sentence to be appealed). Goodwin filed this appeal of his conviction.

**DISCUSSION**

**Sufficiency of the evidence**

In his first issue on appeal, Goodwin asserts that the evidence is insufficient to support his conviction. In reviewing the sufficiency of the evidence, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim.

5

App. 2007); *Allen v. State*, 249 S.W.3d 680, 688-89 (Tex. App.—Austin 2008, no pet.). We view the evidence in the light most favorable to the verdict. *Mauney v. State*, 107 S.W.3d 693, 695 (Tex. App.—Austin 2003, no pet.). The trial court, as the trier of fact in a bench trial, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Id.* Therefore, we presume that the court resolved any conflicting inferences and issues of credibility in favor of the judgment. *Id.*

In this case, the terms of Goodwin's civil commitment statutorily required that he follow the written requirements of CSOT. *See* Tex. Health & Safety Code Ann. § 841.082(a)(4). Thus, any violation by Goodwin of the CSOT requirements would be a *per se* violation of the terms of his civil commitment. *See id.* § 841.085. The indictment alleged that Goodwin violated the CSOT requirements by (a) possessing a "tool, implement, or object" that could cause injury or threaten to cause injury to Goodwin or others and (b) failing to abide by the rules of the residential facility in which he was placed.

Therefore, the State was required to prove beyond a reasonable doubt that Goodwin intentionally and knowingly possessed razorblades and that his possession of razorblades violated the CSOT requirements, either because they were objects that threaten to cause injury or they were prohibited items under the rules of his residential facility.[3] *See* Tex. Health & Safety Code Ann. § 841.085 (making violation of terms of civil confinement a third-degree felony). Given that the trial

---

[3] The statute does not state what the applicable *mens rea* is for violation of the terms of civil commitment. *See* Tex. Health & Safety Code Ann. § 841.085 (West 2010). However, the State amended the indictment to state that Goodwin "intentionally or knowingly possessed razorblades," making intent or knowledge the applicable *mens rea* in this case. *See* Tex. Penal Code Ann. § 6.03(a)–(b) (West 2011).

6

court convicted Goodwin of violating the terms of his civil commitment "as alleged in the indictment," we will affirm Goodwin's conviction if the evidence is sufficient to prove that he violated the CSOT requirements on either theory. *See Herrin v. State*, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002) ("When a general verdict is returned and the evidence is sufficient to support a finding of guilt under any of the paragraph allegations submitted, the verdict will be upheld.") (internal citations omitted). We first determine whether the evidence is sufficient to support Goodwin's conviction based on his intentional possession of objects that threatened to cause injury.

*What are objects that threaten to cause injury?*

The CSOT requirements prohibited Goodwin from possessing any "tool, implement or object to cause or threaten to cause injury" to himself or others. Neither the CSOT requirements nor the Texas Health and Safety Code defines what qualifies as an object that threatens to cause injury. Therefore, we look to the traditional rules of construction to determine what items Goodwin was prohibited from possessing, considering the language of the CSOT requirements as a whole and assume a reasonable meaning and effect. *See, e.g., Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404-05 (Tex. 1971) ("The same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments.").

Theoretically, any object can be used to cause injury to oneself or others. *See Guzman v. State*, 188 S.W.3d 185, 198 (Tex. Crim. App. 2006) ("Our cases make it clear that 'anything' [capable of causing death] means *anything*."). Given that civil committees are permitted to have some possessions, this CSOT requirement cannot reasonably mean that civil committees violate the terms of their commitment merely by possessing any object that theoretically could be

7

used to injure someone.  However, the phrase "tool, implement, or object" encompasses a broad range of items, and thus the CSOT requirement should not be interpreted too narrowly so as to undermine its flexible language.  *See, e.g., Ramos v. State*, 303 S.W.3d 302, 307–08 (Tex. Crim. App. 2009) (concluding that "instrument" as used in section 32.21(e)(3) of Texas Penal Code is broad term that encompassed Social Security card).

The broad language of the CSOT requirement is analogous to the statutory definition of "deadly weapon."  *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (West 2011) (defining deadly weapon as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.").  As our case law makes clear, it is the manner in which a defendant uses an object that makes it a deadly weapon, not the physical properties of the object itself.  *See Guzman*, 188 S.W.3d at 198 n.28 (noting car, belts, chains, locks, and hot water can be deadly weapons) (internal citations omitted).  Similarly, the CSOT requirements should be understood as prohibiting the possession of objects that, in the manner of their use or intended use, threaten to cause injury. Therefore, we interpret the CSOT requirement to mean that civil committees are prohibited from possessing objects for use as weapons.[4]

*Are the razorblades objects that threaten to cause injury?*

Given our conclusion that the CSOT requirements prohibit civil committees from possessing objects for use as weapons, we now determine whether the evidence is sufficient to

---

[4] Webster's defines "weapon" as "an instrument of offensive or defensive combat; something to fight with; something used in destroying, defeating, or physically injuring an enemy." *See* Webster's Third New International Dictionary 818 (Phillip Gove Ed. 2002).

establish that Goodwin possessed razorblades for use as weapons. At trial, the State introduced testimony from the guards at the Travis County facility, all of whom stated that the razorblades they discovered were among Goodwin's possessions: one was within his legal papers, another was in an empty soup packet inside his locker, and the third was underneath his locker. The guards also testified that Goodwin initially claimed that, as a civil committee, he was allowed to possess razorblades, but later claimed that the razorblades did not belong to him. Additionally, the State introduced testimony from Stoddard, who stated that at the time Goodwin entered the Travis County facility, he was told that he could not possess "any tool, implement, or object to cause or threaten to cause injury to [himself] or others" and that he was required to follow the "rules, regulations, and policies" of his residential facility. Finally, the State introduced a copy of the Travis County facility's rules and guidelines, which stated that all residents were prohibited from possessing razorblades. Goodwin, testifying in his own defense, claimed that he did not lock his locker, and thus, someone else may have placed the razorblades in his possessions without his knowledge.

Based on the evidence presented, the trial court could reasonably have concluded that Goodwin intentionally possessed the razorblades, given that they were among his possessions and he initially did not deny that they were his. Furthermore, the court could reasonably have inferred that Goodwin possessed the razorblades for use as a weapon, rather than for a benign purpose, given that Goodwin actively concealed them in several locations. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Attempts to conceal incriminating evidence . . . are probative of wrongful conduct and are also circumstances of guilt."); *see also Ex parte Hopson*, 688 S.W.2d 545, 547–48 (Tex. Crim. App. 1985) (noting that prisoner used razorblades as deadly weapon in escape

9

attempt). Finally, the court could reasonably have determined that the razorblades were "objects that threatened to cause injury." *See Hopson*, 688 S.W.2d at 548. Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that the trial court could reasonably have determined that Goodwin intentionally possessed razorblades, and that possession of razorblades violated the CSOT requirements because they were objects that threaten to cause injury. Given that a violation of the CSOT requirements is a *per se* violation of the terms of Goodwin's civil commitment, we conclude that the evidence is sufficient to support Goodwin's conviction. Therefore, we do not need to determine whether the evidence supports Goodwin's conviction based on any other allegation. *See Herrin*, 125 S.W.3d at 441 (noting that verdict upheld if evidence sufficient to support finding of guilt on any theory in indictment); *see also* Tex. R. App. P. 47.1 (requiring appellate courts to hand down opinions that are as brief as possible while addressing those issues necessary to final disposition of appeal). Goodwin's first point of error is overruled.[5]

**Motion to suppress**

In his second point of error, Goodwin claims that the trial court erred in denying his motion to suppress the evidence seized from his locker as "fruit" of his unlawful detention.[6] *See*

---

[5] Goodwin also appears to assert that, as a matter of law, he cannot be culpable for violating the Travis County facility's rules because his detention in that facility was unlawful. However, Goodwin does not cite to any statute, case law, or legal authority to support this position. Accordingly, we consider this issue to be waived as inadequately briefed. *See* Tex. R. App. P. 38.1(i).

[6] Goodwin also claims that the evidence should be suppressed as the product of a warrantless search. *See Neil v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008) (explaining State's burden of showing reasonableness of warrantless search). However, Goodwin did not raise this argument in the trial court, and thus this complaint was not properly preserved for review, and is therefore waived. *See* Tex. R. App. P. 31.1; *Hull v. State*, 67 S.W.3d 215, 217 (Tex. Crim. App. 2002).

Tex. Code Crim. Proc. Ann. art. 32.83(a) (requiring exclusion of evidence that was unlawfully obtained). We review a trial court's ruling on a motion to suppress for an abuse of discretion, using a bifurcated standard. *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's determination of historical facts, but review the application of the law to the facts de novo. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). The ruling will be upheld if it is supported by the evidence and is correct under any legal theory. *See State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008).

Evidence that is seized as a result of an unlawful detention is generally considered "fruit of the poisonous tree," and thus is inadmissable as an indirect product of the unlawful detention. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (requiring exclusion of evidence that was unlawfully obtained); *see also Iduarte*, 268 S.W.3d at 550–51 (describing "fruit of the poisonous tree" doctrine) (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)). However, if the connection between the unlawful detention and the seizure of the evidence "has become so attenuated as to dissipate the taint" of the unlawful government act, the evidence is deemed admissible. *Wong Sun*, 371 U.S. at 491–92 (internal quotations omitted); *see also Iduarte*, 268 S.W.3d at 550–51. Thus, the question is not whether the evidence would not have been discovered "but for" the unlawful government act, but rather, whether the seizure of the evidence has been sufficiently purged of the taint of the unlawful act. *Iduarte*, 268 S.W.3d at 550–51 (quoting *Wong Sun*, 371 U.S. at 491–92).

In this case, the trial court granted Goodwin's habeas petition, finding that the transfer of Goodwin from the Harris County facility to the Travis County facility violated due process, and

11

therefore his detention in the Travis County facility was unlawful. The State failed to appeal this ruling, and thus it is procedurally barred from arguing that the trial court erred in its holding. *See* Tex. R. App. P. 26.2(b) (requiring State to file notice of appeal within 20 days of final order); *see also* *Rodarte v. State*, 860 S.W.2d 108, 110 (Tex. Crim. App. 1993) (holding that court lacks jurisdiction to entertain untimely appeal). Therefore, we analyze Goodwin's suppression of evidence claim under the supposition that Goodwin was unlawfully detained in the Travis County facility.

The Texas Court of Criminal Appeals has held that a "subsequent independent criminal act" that occurs after an unlawful government action removes the taint of the government act, making evidence of the subsequent criminal act admissible. *Iduarte*, 268 S.W.3d at 551. In *State v. Iduarte*, the defendant was convicted of aggravated assault on a peace officer because he pointed a gun at an officer after the officer unlawfully entered his home. *See id.* at 547–48. The defendant asserted that the officer's testimony about the assault should be excluded as fruit of the unlawful entry. *Id.* The court of criminal appeals disagreed, holding that "evidence of the [assault] did not exist before the [unlawful entry] because the [assault] had not yet occurred," and thus the evidence was not causally connected to the unlawful entry. *Id.* at 551.[7] Therefore, the court concluded that the subsequent independent criminal act was not tainted by the initial unlawful entry, and thus evidence of the assault was admissible. *Id.*

---

[7] The court noted that the defendant's argument, taken to the extreme, would mean that an individual who was unlawfully detained could kill the detaining officer and then have all evidence of the murder suppressed as fruit of the initial unlawful detention. *See State v. Iduarte*, 268 S.W.3d 544, 551 n.14 (Tex. Crim. App. 2008) (quoting *Martinez v. State*, 91 S.W.3d 331, 340 (Tex. Crim. App. 2002)).

In this case, the discovery of the razorblades amongst Goodwin's possessions occurred several months after his unlawful transfer to the Travis County facility. Goodwin concealed the razorblades in his personal effects in violation of the CSOT requirements, both because they were potential weapons and because they were prohibited by the Travis County facility. Thus, Goodwin's possession of the razorblades constituted a violation of the terms of his civil commitment, an independent criminal offense, which occurred after his unlawful transfer. *See* Tex. Health & Safety Code Ann. §§ 841.082(a)(4), 841.085. Therefore, we conclude that the trial court did not abuse its discretion in admitting the razorblades as evidence of a "subsequent independent criminal act" which was not tainted by Goodwin's unlawful detention. *See Iduarte*, 268 S.W.3d at 550–51. Goodwin's second point of error is overruled.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson and Goodwin

Affirmed

Filed:   July 31, 2012

Publish

13