# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00403-CR

**Joseph Timothy Shimko, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
### NO. C-1-CR-12-215308
### HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following the denial of his motion to suppress evidence, appellant Joseph Shimko pleaded no contest to driving while intoxicated. In accordance with the plea bargain, the trial court found him guilty and sentenced him to three days in the county jail and imposed a 90-day suspension of his driver's license. In his sole point of error, Shimko asserts that the trial court erred in denying his motion to suppress because the evidence was obtained as a result of an unlawful detention. We will affirm the trial court's judgment of conviction.

# BACKGROUND[1]

On September 12, 2012, at 2:30 a.m., Deputy Ford was outside a pub assisting other officers on an unrelated call. Deputy Ford saw Scott Williamson staggering in the parking lot and determined that he was intoxicated. Williamson said he had a ride home, so the officers decided not to arrest him for public intoxication and had him sit on the curb to wait for his ride. Deputy Ford saw a vehicle circling the parking lot once or twice and pointed it out to Williamson, who indicated that the vehicle was his ride home.

The vehicle passed Deputy Ford and Williamson, so Deputy Ford flagged it down. Deputy Ford could not remember whether he yelled at the driver or made some type of gesture. According to Deputy Ford, he signaled to the vehicle to ascertain whether the driver was Williamson's ride, and if the driver had ignored his signal and driven off, Deputy Ford would not have pursued the vehicle. However, the driver did stop, and when Deputy Ford approached the vehicle to inform the driver, Shimko, that Williamson was sitting on the curb, he smelled the odor of alcohol. Deputy Ford then asked Shimko to exit the vehicle and began an investigation for driving while intoxicated.

Shimko was subsequently charged with driving while intoxicated. Prior to trial, Shimko moved to suppress evidence gathered after Deputy Ford signaled for him to stop, asserting that he was unlawfully detained and that consequently the evidence against him was obtained in

---

[1] The following facts are taken from the findings of fact and conclusions of law, which the trial court made after the hearing on the motion to suppress and which are supported by the testimony given at the hearing by Deputies Jeff Ford and Jeremy Turner of the Travis County Sheriff's Office. These underlying findings of fact are not directly challenged on appeal.

2

violation of the Fourth Amendment. The trial court denied Shimko's motion because it concluded that Deputy Ford's initial interaction with Shimko was an encounter, not a detention, and that even if the interaction was a detention, Deputy Ford was acting in a community-caretaking function.[2] This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *Goodwin v. State*, 376 S.W.3d 259, 266 (Tex. App.—Austin 2012, pet. ref'd). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). When the trial court makes express findings of historical fact, as it did here, we afford almost total deference to those findings as long as they are supported by the record, and we also view the findings in the light most favorable to the trial court's ruling. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014). We also give almost total deference to rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). We will affirm the trial court's ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

---

[2] Specifically, in its conclusions of law, the trial court stated that "Deputy Ford was acting in a community care-taking function with regard to Mr. Williamson," and that "Deputy Ford's conduct was consistent with a police encounter rather than a detention."

**DISCUSSION**

An interaction between law-enforcement officers and a citizen may be categorized as a consensual encounter, an investigative detention, or an arrest. *See State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). Officers must have legal justification to conduct detentions and arrests, because these interactions are seizures implicating a citizen's rights under the Fourth Amendment. *Id.* at 411. If a detention occurred without a warrant, the State bears the burden of establishing that the detention was nevertheless reasonable. *Id.* at 412. The State can meet that burden by showing that the officer had reasonable suspicion that the citizen was, has been, or soon would be, engaged in criminal activity. *Id.* at 411.

Also, the United States Supreme Court has established the "community-caretaking" exception to the warrant requirement, "recognizing that police officers may contact citizens 'and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.'" *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). The court of criminal appeals has also recognized this exception, explaining that an officer "'may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe is in need of help.'" *Corbin v. State*, 85 S.W.3d 272, 277 (Tex. Crim. App. 2002) (italics removed, quoting *Wright v. State*, 7 S.W.3d 148, 151 (Tex. Crim. App. 1999)). Therefore, an officer acting in a community-caretaking function does not need reasonable suspicion to detain someone. *See King v. State*, No. 05-13-00178-CR, 2014 WL 2807993, at *2 (Tex. App.—Dallas June 18, 2014, no pet.) (mem. op., not designated for

publication) ("[E]ven without reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably stop or detain a person through the exercise of his community caretaking function.").

On appeal, Shimko argues that the trial court erred in denying his motion to suppress because his interaction with Deputy Ford was an investigative detention from the moment Deputy Ford signaled for Shimko to stop. Shimko further argues that because Deputy Ford did not have reasonable suspicion, his detention was an unreasonable and unconstitutional seizure. Finally, Shimko argues that the community-caretaking exception to the Fourth Amendment's warrant requirement is irrelevant to this case because Deputy Ford had no reason to believe that Shimko needed assistance. The State does not dispute that Deputy Ford was without reasonable suspicion to detain Shimko. Instead, the State contends that Deputy Ford's interaction with Shimko was a consensual encounter—not a detention. We will assume without deciding that Shimko's interaction with Deputy Ford was an investigative detention conducted without reasonable suspicion and will instead examine whether the community-caretaking exception applies.

To determine whether the community-caretaking exception applies, we must inquire (1) whether the officer was primarily motivated by a community-caretaking purpose and (2) whether the officer's belief that the individual needed help was reasonable. *Gonzalez*, 369 S.W.3d at 854–55. The court of criminal appeals has listed four non-exclusive factors that a court may consider in deciding whether the officer's belief that the individual needed assistance was reasonable: (1) the nature and level of distress exhibited, (2) the location, (3) whether the individual had access to assistance independent of the officer, and (4) to what extent the individual presented a danger to

5

himself and others if not assisted. *Wright*, 7 S.W.3d at 151–52. The first factor receives the greatest weight but is not always dispositive. *Gonzalez*, 369 S.W.3d at 855.

The relevant facts in this case are uncontested. Deputy Ford testified that Williamson was "very intoxicated" and that he had observed Williamson "almost trip and fall." The deputies also testified that Williamson was in the parking lot of a pub at 2:30 in the morning, where he was unlikely to receive assistance without Deputy Ford's intervention. From this testimony, the trial court could reasonably have concluded that because Williamson could barely walk, he presented a danger to himself, and if he were to try to drive, then he would also present a danger to others. Moreover, Deputy Ford testified that he made contact with Shimko "to ascertain whether or not he was, in fact, Mr. Williamson's ride," as Williamson claimed. Deputy Ford further testified that if Shimko had driven off instead of stopping, Deputy Ford would not have pursued Shimko, because he "had no reason to." Therefore, the record before us and the unchallenged findings of fact support the conclusion that: (1) Deputy Ford was primarily motivated by a community-caretaking purpose in trying to secure a sober ride for Williamson and, in furtherance of that purpose, signaled for Shimko to stop, and that (2) under the totality of the circumstances, Deputy Ford's belief that Williamson needed help, and that stopping Shimko was in the furtherance of providing that help, was reasonable.

Because the trial court could have reasonably concluded that Deputy Ford was primarily motivated by a community-caretaking purpose and that his belief that Williamson needed help was reasonable, the community-caretaking exception to the Fourth Amendment's warrant requirement applies. Therefore, even if Deputy Ford detained Shimko without reasonable suspicion,

6

the detention was constitutional, and the trial court did not abuse its discretion in denying Shimko's motion to suppress. Accordingly, we overrule Shimko's sole point of error.

## CONCLUSION

Having overruled Shimko's sole point of error, we affirm the judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Pemberton, Field and Bourland

Affirmed

Filed: May 21, 2015

Do Not Publish