# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00044-CR

**John Fredrick Zedler, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-12-0771, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following the denial of his motion to suppress evidence, a jury found appellant John Zedler guilty of murder and assessed punishment at 60 years' imprisonment, and the trial court rendered judgment on the jury's verdict. *See* Tex. Penal Code § 19.02. In two points of error, Zedler contends that the trial court should have granted his motion to suppress and that the trial court's judgment contains an error that should be corrected. We will modify the trial court's judgment and affirm the judgment as modified.

## BACKGROUND

Detective Angelo Floiran and other law enforcement officials interviewed Zedler on June 27, 2012, in connection with the death of Zedler's wife. During the interview, Zedler invoked his right to counsel. A few days later, Zedler met with his son Brandon and indicated a desire to

speak with the police again.  On July 11, 2012, while Zedler was in custody under suspicion for homicide, Detective Floiran again interviewed Zedler.  During this second interview, Zedler waived his *Miranda* rights and made self-incriminating statements suggesting that he caused the injuries discovered on his wife's body.  Zedler's subsequent motion to suppress the video recording of the second interview was denied, and the recording was published to the jury at trial.  The jury found Zedler guilty of murder, and this appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *Goodwin v. State*, 376 S.W.3d 259, 266 (Tex. App.—Austin 2012, pet. ref'd). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013).  We give almost total deference to rulings on application of the law to questions of fact and to mixed questions of law and fact if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013).  We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011).  We will affirm the trial court's ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

**DISCUSSION**

*Motion to suppress*

In *Edwards v. Arizona*, the United States Supreme Court held that an accused, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 484–85 (1981); *see Cross v. State*, 144 S.W.3d 521, 529 (Tex. Crim. App. 2004) ("[T]he critical inquiry is whether the suspect was further interrogated before he reinitiated conversation with law enforcement officials. If he was not, *Edwards* is not violated."). In his first point of error, Zedler contends that his Fifth Amendment rights articulated in *Edwards* were violated because Detective Floiran interviewed Zedler again after he had invoked his right to counsel in his first interview.

Zedler makes two arguments in support of his *Edwards* claim. First, Zedler argues that he did not reinitiate contact with law enforcement and that it was his son, Brandon, who asked Detective Floiran to speak to Zedler a second time.[1] However, the State contends that Brandon

---

[1] To the extent Zedler argues that an accused can *never* initiate contact with law enforcement under *Edwards* through a third party, we reject that contention. *See Van Hook v. Anderson*, 488 F.3d 411, 423 (6th Cir. 2007) (concluding that under *Edwards* a suspect "can initiate a discussion with police through the communication of a third party"); *Owens v. Bowersox*, 290 F.3d 960, 963 (8th Cir. 2002) ("[W]e do not believe that it was unreasonable for the state court to hold that a defendant may 'evince' a willingness and desire to discuss the crime by communicating with the police through a third party, especially a close relative."); *United States v. Michaud*, 268 F.3d 728, 737–38 (9th Cir. 2001) (concluding defendant initiated contact under *Edwards* through a third party); *United States v. Gaddy*, 894 F.2d 1307, 1311 (11th Cir. 1990) (concluding defendant initiated contact through his aunt). Zedler relies on the Fifth Circuit's decision in *United States v. Rodriguez* to support his argument that his conversation with Brandon did not constitute an initiation under *Edwards*. *See* 993 F.2d 1170, 1174 (5th Cir. 1993) (concluding that defendant did not initiate contact under

initiated contact with the detective on Zedler's behalf.  Viewing the evidence in the light most favorable to the verdict, as me must, we determine that there is sufficient evidence in the record to support this conclusion.

At the hearing on the motion to suppress, Brandon testified that he spoke with Zedler a few days after the alleged murder.  According to Brandon, Zedler stated that he was not sure what had happened on the night of the incident.  Brandon suggested that Zedler talk to the detective again, and Zedler agreed and said he wanted to talk to the detective.  Although Brandon also testified that he was unsure whether it was originally his idea or Zedler's idea for Zedler to talk to the detective again, the trial court was entitled to conclude, as it did, that it was ultimately Zedler's decision to reinitiate contact with law enforcement and that Brandon acted on Zedler's behalf when he asked Detective Floiran to speak with Zedler.  *See St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (in ruling on motion to suppress, "the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony").  Even if it were originally Brandon's idea that Zedler should speak with Floiran, Brandon's undisputed testimony was that Zedler agreed with Brandon's suggestion and wanted to speak with the detective.  Deferring to the trial court's determination of the underlying facts, we conclude, as a matter of law, that Zedler reinitiated contact with law enforcement through Brandon.  *See Holman v. Kemna*, 212 F.3d 413,

---

*Edwards* through co-defendant).  However, we conclude that *Rodriguez* does not stand for the proposition that an accused can never reinitiate contact with law enforcement through a third party. Instead, the *Rodriguez* court merely determined that an initiation had not occurred under the facts of that case.  *Rodriguez* is distinguishable from the present case because, in *Rodriguez*, the alleged initiation occurred through a co-defendant, the co-defendant never actually told the officer that the defendant wished to speak to him, and the evidence of the officer's conversation with the co-defendant was hearsay.  *See id.*

4

417 (8th Cir. 2000) (stating that "whether those facts [found by the state court] constitute an 'initiation' under *Edwards* is a legal question requiring de novo review"); *United States v. Whaley*, 13 F.3d 963, 968 (6th Cir. 1994) ("While we accept, unless clearly erroneous, the facts that the district court found, whether those facts together constitute an 'initiation' under *Edwards* is a legal question we review *de novo*.").

Second, Zedler argues that "the time lapse between [Brandon's] conversation with the detective and the detective's visit to the jail" indicates that Zedler did not wish to initiate contact with the police. In other words, Zedler is arguing that, even if his conversation with Brandon constituted an initiation under *Edwards*, that initiation had become ineffective or stale by the time Detective Floiran returned to interview Zedler.

In support of this argument, Zedler cites *United States v. Whaley*. In that case, the defendant told an officer that he would like to discuss his case, and a different officer interviewed the defendant over three weeks later. *Whaley*, 13 F.3d at 964–65. The Sixth Circuit concluded that, "[w]hether or not Whaley's exchange with [the officer] might have at the time constituted an *Edwards* initiation, given that Whaley did nothing else during the succeeding three-week period, his actions certainly do not show a willingness and a desire to speak generally about his case." *Id.* at 968. The court therefore reversed Whaley's conviction. *Id.* at 969.

Zedler has not called our attention to any Texas case holding, as *Whaley* does, that an accused's initiation under *Edwards* can become invalid merely because of the passage of time, and we have found no such case. Even assuming without deciding that an initiation can expire over time, we conclude that Zedler's initiation remained valid when Detective Floiran conducted the

5

second interview. There was no evidence presented at trial concerning the length of time between when Brandon told Floiran that Zedler would like to speak with him and when Floiran interviewed Zedler the second time. Therefore, there was no evidence that the police failed to timely act on Zedler's initiation or were responsible for any delay in conducting Zedler's second interview. Under the specific facts of this case, we cannot conclude that Floiran's second interview with Zedler demonstrated "police overreaching" of the type *Edwards* was intended to discourage. *See Griffin v. Lynaugh*, 823 F.2d 856, 861 (5th Cir. 1987); *see also id.* at 862 (stating that "these [Supreme Court] cases are clearly indicative to us that in the absence of some police interference with the exercise of the right to counsel of the accused, the *Edwards* rule is to be strictly and narrowly applied"). We therefore hold that because Zedler reinitiated contact with law enforcement through Brandon, the second interview with Detective Floiran did not violate Zedler's rights under *Edwards*. Accordingly, we overrule Zedler's first point of error.

### Error in the judgment

In his second point of error, Zedler contends that the trial court's judgment contains an error that should be corrected. We agree. On the first page of the judgment, in the blank labeled "Findings on Deadly Weapon," the entry is "N/A". However, the jury made an affirmative finding that Zedler used a deadly weapon during the commission of the murder, a fact noted on the judgment's second page. Accordingly, we sustain Zedler's second point of error and modify the judgment to reflect on the first page that the jury found Zedler used a deadly weapon. *See* Tex. R. App. P. 43.2(b).

6

## CONCLUSION

We affirm the judgment of conviction as modified.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Modified and, as Modified, Affirmed

Filed:   July 23, 2015

Do Not Publish

7