# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REHEARING

## NO. 03-13-00403-CR

**Joseph Timothy Shimko, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY
### NO. C-1-CR-12-215308
### HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment dated May 21, 2015, and substitute the following opinion and judgment in their place.

Following the denial of his motion to suppress evidence, appellant Joseph Shimko pleaded no contest to driving while intoxicated. In accordance with the plea bargain, the trial court found him guilty and sentenced him to three days in the county jail and imposed a 90-day suspension of his driver's license. In his sole point of error, Shimko asserts that the trial court erred in denying his motion to suppress because the evidence was obtained as a result of an unlawful detention. We will affirm the trial court's judgment of conviction.

## BACKGROUND[1]

On September 12, 2012, at around 2:30 a.m., Deputy Ford was outside a pub assisting other officers on an unrelated call. Deputy Ford saw Scott Williamson staggering in the parking lot and determined that he was intoxicated. Williamson said he had a ride home, so the officers decided not to arrest him for public intoxication and had him sit on the curb to wait for his ride. Deputy Ford saw a vehicle circling the parking lot once or twice and pointed it out to Williamson, who indicated that the vehicle was his ride home.

The vehicle passed Deputy Ford and Williamson, so Deputy Ford flagged it down. Deputy Ford testified that he could not remember whether he yelled at the driver or made some type of gesture. According to Deputy Ford, he signaled to the vehicle to ascertain whether the driver was Williamson's ride, and if the driver had ignored his signal and driven off, Deputy Ford would not have pursued the vehicle. However, the driver did stop, and when Deputy Ford approached the vehicle to inform the driver, Shimko, that Williamson was sitting on the curb, he smelled the odor of alcohol. Deputy Ford then asked Shimko to exit the vehicle and began an investigation for driving while intoxicated.

Shimko was subsequently charged with driving while intoxicated. Prior to trial, Shimko moved to suppress evidence gathered after Deputy Ford signaled for him to stop, asserting that he was unlawfully detained and that consequently the evidence against him was obtained in

---

[1] The following facts are taken from the findings of fact and conclusions of law, which the trial court made after the hearing on the motion to suppress and which are supported by the testimony given at the hearing by Deputies Jeff Ford and Jeremy Turner of the Travis County Sheriff's Office. These underlying findings of facts are not directly challenged on appeal.

violation of the Fourth Amendment. The trial court denied Shimko's motion because it concluded that Deputy Ford's initial interaction with Shimko was an encounter, not a detention, and that even if the interaction was a detention, Deputy Ford was acting in a community-caretaking function.[2] This appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *Goodwin v. State*, 376 S.W.3d 259, 266 (Tex. App.—Austin 2012, pet. ref'd). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). When the trial court makes express findings of historical fact, as it did here, we afford almost total deference to those findings as long as they are supported by the record, and we also view the findings in the light most favorable to the trial court's ruling. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014). In addition, we give almost total deference to rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). Whether the facts surrounding the interaction between an officer and a citizen, so established,

---

[2] Specifically, in its conclusions of law, the trial court stated that "Deputy Ford was acting in a community care-taking function with regard to Mr. Williamson," and that "Deputy Ford's conduct was consistent with a police encounter rather than a detention."

constitute a consensual encounter or a Fourth Amendment detention is subject to de novo review. *Johnson*, 414 S.W.3d at 192.

## DISCUSSION

An interaction between law-enforcement officers and a citizen may be categorized as a consensual encounter, an investigative detention, or an arrest. *See State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011). A consensual encounter takes place when an officer approaches a citizen in a public place to ask for information or their cooperation, and the citizen is willing to listen and voluntarily answers. *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). Officers may be "as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man." *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). Consensual encounters may involve embarrassment and inconvenience but not official coercion. *Id*.

An investigative detention occurs when a citizen yields to a police officer's "show of authority under a reasonable belief that he is not free to leave." *Crain*, 315 S.W.3d at 49. Officers must have legal justification to conduct detentions, which constitute seizures implicating a citizen's rights under the Fourth Amendment. *Woodard*, 341 S.W.3d at 411. To determine whether an interaction between an officer and a citizen rises to an investigative detention, we must focus on whether "the officer conveyed a message that compliance with the officer's request was required." *Crain*, 315 S.W.3d at 51. The test is whether a reasonable person in the citizen's position "would have felt free to decline the officer's requests or otherwise terminate the encounter." *Id*. The "reasonable person" is assumed "to have considerable fortitude." *Wade v. State*, 422 S.W.3d 661,

4

667 n.19 (Tex. Crim. App. 2013). She knows her rights and feels free to exercise them; is not intimidated by the police; and "rests secure in the knowledge that . . . the police cannot legally draw an inference of criminality" from her refusal to cooperate. *Id*. (quoting Daniel J. Steinbock, *The Wrong Line Between Freedom and Restraint: The Unreality, Obscurity, and Incivility of the Fourth Amendment Consensual Encounter Doctrine*, 38 San Diego L. Rev. 507, 563 (2001)).

In making the determination, we must look at the totality of the circumstances. *Id*. at 49. Surrounding circumstances, including time and place, are "taken into account," but the most important factor is the officer's conduct. *Woodard*, 341 S.W.3d at 411. Circumstances that may indicate a Fourth-Amendment seizure "include the threatening presence of several officers, the officer's display of a weapon, physical touching of the citizen by the officer, the officer's words or tone of voice indicating that compliance with the officer's requests might be compelled, or flashing lights or blocking a suspect's vehicle." *State v. Woodard*, 314 S.W.3d 86, 94 (Tex. App.—Fort Worth 2010), *aff'd*, 341 S.W.3d 404 (Tex. Crim. App. 2011) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "Absent this type of evidence, however, otherwise inoffensive conduct between a citizen and a police officer cannot, as a matter of law, amount to a seizure of that person." *Id.*

On appeal, Shimko argues that the trial court erred in denying his motion to suppress because his interaction with Deputy Ford was an investigative detention from the moment Deputy Ford signaled for Shimko to stop. As the party moving to suppress evidence, Shimko bore the burden of establishing a basis for his Fourth-Amendment claim. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998) (per curiam) ("The party bringing the motion to suppress bears the burden of establishing all of the elements of her Fourth Amendment claim.").

5

At the pretrial hearing on the motion to suppress, Deputy Ford at first testified that he flagged Shimko down and "kind of waved and asked Mr. Shimko to stop." When pressed as to the exact language or gestures he used, Deputy Ford testified, "I just raised my hand and asked him to stop. And I'm not real clear on how—whether I yelled out or whether I made some type of gesture." Ultimately, Deputy Ford admitted, "I'm just not sure. I'm not sure how I did it. I know that whatever method I used, I know that he did stop." The trial court in its findings of fact found that Deputy Ford "either flagged down or called for the driver of the vehicle to stop." Deputy Turner acknowledged that he "did not see or hear what Deputy Ford said or did to get Mr. Shimko to stop his vehicle."

Having considered Deputy Ford's testimony and the circumstances surrounding the interaction, we conclude that Shimko has failed to carry his burden of establishing a Fourth-Amendment claim by demonstrating that his interaction with Deputy Ford was an investigative detention. Deputy Ford testified that he made contact with Shimko solely "to ascertain whether or not he was, in fact, Mr. Williamson's ride." Deputy Ford further testified that he would have had no reason to pursue Shimko if Shimko had ignored his signal and driven off. In addition, Deputies Ford and Turner testified that when Deputy Ford signaled Shimko, the other officers were busy impounding a vehicle and were uninvolved in the interaction. Deputy Ford also testified that none of the police vehicles had their overhead lights on and that he probably did not have a flashlight in his hand when he signaled Shimko.

Based on the record before us, we cannot conclude Deputy Ford's words or actions amounted to "a display of official authority and the implication that this authority cannot be ignored,

6

avoided, or terminated." *Garcia-Cantu*, 253 S.W.3d at 243.  Because Shimko has not demonstrated that the interaction between Deputy Ford and Shimko was anything other than a consensual encounter, he has failed to carry his burden of establishing a Fourth-Amendment claim.  *See Mercado*, 972 S.W.2d at 78.  Accordingly, the trial court did not abuse its discretion in denying his motion to suppress.  We therefore overrule Shimko's sole point of error.

## CONCLUSION

Having overruled Shimko's sole point of error, we affirm the trial court's judgment of conviction.

_____

Scott K. Field, Justice

Before Justices Pemberton, Field, and Bourland

Affirmed on Rehearing

Filed:   November 25, 2015

Do Not Publish