NO. *1219·15*

ORIGINAL

IN THE
COURT OF CRIMINAL
APPEALS
OF TEXAS


JOHN FREDERICK ZEDLER

V.

THE STATE OF TEXAS
RESPONDENT

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 01 2015

Abel Acosta, Clerk


NO. CR-12-0771 IN THE
22ND DISTRICT COURT
OF HAYS COUNTY, TEXAS
AND
NO. 03-14-00044-CR
FOR THE
THIRD COURT OF APPEALS


PETITION FOR DISCRETIONARY REVIEW


FILED IN
COURT OF CRIMINAL APPEALS

DEC 0 1 2015

Abel Acosta, Clerk

JOHN FREDERICK ZEDLER
Petitioner, Pro Se
TDCJ# 01902409
Polunsky Unit
3872 FM 350 South
Livingston, Tx   77351

I

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| | IDENTITY OF INTERESTED PARTIES | 01 |
| I. | INDEX OF AUTHORITIES | III |
| II. | STATEMENT REGARDING ORAL ARGUMENT | 02 |
| III. | STATEMENT OF CASE | 02 |
| IV. | STATEMENT OF PROCEDURAL HISTORY | 02 |
| V. | GROUNDS FOR REVIEW | 03 |
| VI. | ARGUMENT | 03 |
| VII. | PRAYER FOR RELIEF | 12 |
| VIII. | APPENDIX | 13 |

# I.
## INDEX OF AUTHORITIES

**U.S. CASES:**                                                    Page

1.  Arizona v. Roberson, 486 U.S. 675,681,108 S.Ct., 2093;-
    -100 L. Ed. 2d 704 (1988.........................................10

2.  Edwards v. Arizona, 45 U.S. 477; 101S.Ct. 1880,68 L.Ed.2d-
    -378 (1981) ..............................................**6,7,8,9,**10

3.  Minnick v. Mississippi, 498, U.S.146,147, 111 S.Ct. 486,-
    112 L.Ed. 2d 489 (1990) ..................................10

4.  Oregon v. Bradshaw, 462 U.S. 1039, 103 S. Ct. 2830,
    77 L.Ed. 2d 405 (1983) ...................................11

5.  Van Hook v. Anderson, 488 F 3d 411 (6th Cir. 2007) .........11

6.  U.S. v. Whaley,13F.3d 963(6th Cir.1994) ...................06

**STATE CASES:**

1.  Cross v. State, 144 S.W.3d 527(Tex. Cr.App. 2004) ..........11

2.  McCarthy v. State, 65 S.W.3d 47(Tex. Cr.App. 2001) .........11


**STATUTES AND RULES:**

1.  Code of Criminal Procedure-Art. 1.051(c) ...................11

NO. _____


IN THE
COURT OF CRIMINAL
APPEALS
OF TEXAS

---

JOHN FREDERICK ZEDLER
PETITIONER

V.

THE STATE OF TEXAS

---

NO. CR-12-0771 in the
22ND DISTRICT COURT
OF HAYS COUNTY, TEXAS
AND
NO. 03-14-00044-CR
THIRD DISTRICT COURT OF APPEALS

---

PETITION FOR DISCRETIONARY REVIEW

---

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS
OF TEXAS:

Comes now the petitioner, John Frederick Zedler, Pro Se, in the above-styled and numbered cause and respectfully urges the courts to grant discretionary review in this case, Pursuant to the rules of the court.

(1)

                                II

STATEMENT REGARDING ORAL ARGUMENT:

Oral argument not required.


                               III




STATEMENT OF THE CASE:

Petitioner was indicted for the murder of Mildred Zedler, by

asphyxiation.(CR 15) Petitioner plead "NOT GUILTY". (3 R.R. 23-24)

on December 11, 2013, the jury found petitioner guilty. (4 R.R.2)

The next day he was sentenced to 60 years in the INSTITUTIONAL

DIVISION of the Texas Department of Criminal Justice.



                             .  IV




STATEMENT OF PROCEDURAL HISTORY:

     Petitioner was charged by indictment in this cause on

September 5,2012.  Jury selection occurred on December 9, 2013-

-(R.R. II, p.p. 5-258)  On December 10, 2013, after hearing the

evidence and the argument from counsel, the jury deliberated and

returned a verdict of guilty. (R.R. IV, p.87; C.R. 2086-2094)

On December 12, 2013, after hearing the evidence and argument

from counsel, the jury deliberated and assessed petitioner's

punishment at sixty (60) years imprisonment. (R.R.V, P.30;C.R.-

-2095-2098)  The trial court sentenced him that day. (R.R.V,p.32;-

-C.R. 2100-2101)  The trial court's certification of defendent'a

rights to appeal was filed on December 12, 2013. (C.R. 2099)

A motion for new trial was filed on December 12, 2013.(C.R.2106)


                               (2)

Notice of appeal was filed on January 7, 2014,(C.R. 2111-2112)

The Third Court of Appeals rendered its decision affirming

petitioners conviction on July 23, 2015. A motion for

rehearing asking the Court of Appeals to revisit the case was

filed on July 23, 2015. The Court of Appeals denied the motion

for rehearing on September 2, 2015. Motion for extension of time

in which to file the Petition for Discretionary Review was 

granted on November 2, 2015 by the Court of Criminal Appeals

of Texas.


V


## GROUNDS FOR REVIEW

GROUND ONE:

The Third Court of Appeals erred when it said that the record

did not reflect the length of time between when petitioner's son

told the detective that petitioner would like to speak with him

and when the detective interviewed petitioner the second time:;



GROUND TWO:

The Third Court of Appeals erred when it found that petitioner

re-initiated contact with Law Enforcement:


VI


## ARGUMENT

GROUND ONE:

The Court of Appeals erred when it said that the record did

not reflect the length of time between when petitioner's son told the detective that petitioner would like to speak with him and when the detective interviewed petitioner the second time.

The Court of Appeals has decided an important question of State or Federal law that has not been, but should be, settled by the Court of Criminal Appeals.

In its opinion the panel of the Third Court of Appeals concluded that petitioner initiated the second interview with Detective Floiran. The panel then wrote the following:

> "There was no evidence presented at trial concerning the length of time between when Brandon told Floiran that Zedler would like to speak with him and when Floiran interviewed Zedler the second time. Therefore, there was no evidence that the police failed to timely act on Zedler's initiation or were responsible for any delay in conducting Zedler's second interview." (slip opinion, p.6)

This statement is totally wrong. The record reflects that a hearing was held on petitioner's motion to suppress outside the presence of the jury on December 9, 2013, immediately after jury selection. (R.R. II, p.276-328)

During that hearing the court heard testimony from Brandon Zedler, petitioner's son, who testified that he asked Detective Floiran to talk to petitioner (his father) a second time. (R.R.-II, pp. 272-282) Detective Floiran also testified during the hearing and told the court about his two interviews with petitioner. He testified that petitioner invoked his counsel during the first interview. (R.R. II, pp. 285-295) During his testimony he testified that he went to the jail to talk to petitioner the second time after Brandon told him that his father did not re-

(4)

member a lot about what had happened and had questions and wanted to talk to the detective. (R.R. II, pp. 296-298,303-304) During the hearing the trial court watched the video of the detective's first interview with petitioner. (R.R. II, pp.313-322) The court then asked the parties about the circumstances of the second interview and the following occurred:

THE COURT: And what's the time frame between this event where he says he wants his lawyer,to when the second interview takes place:

MR. ERSKINE: The second interview took place-

THE COURT: What's the time frame?

MS. MCDANIEL: From the 22nd of June to the 11th of July.

MR. ERSKINE: Thank you, Correct.

MS. MCDANIEL: Or maybe after midnight. Maybe the 28th of June; but, whatever.

MR. ERSKINE: Right. So a matter of two weeks, approx- imately.

THE COURT: July What?

MS. MCDANIEL: The 11th.

MR. ERSKINE: Of 2012." (R.R. II, p. 323)

The next morning the trial court watched the video of the second interview and then ruled that it would allow the video of the second interview to be seen by the jury, noting that the second interview occurred two weeks after the first interview. (R.R. III- -, pp. 16-20)

Petitioner asks the Court to re-examine his case in light of the fact that the record does contain evidence that there was a two week delay between Brandon's conversation with the detective and the detective talking to petitioner. During this two week

(5)

time span, petitioner made no effort to tell anyone that he wanted to speak to authorities about his case. Petitioner's actions during that time certainly do not show a willingness and a desire to talk to the authorities about his case. Petitioner's situation is very similar to the situation in UNITED STATES V. WHALEY,-13 F.3d 963(6th Cir. 1994). In Whaley, there was a three week interval between Whaley making an ambiguous request to talk to an officer about his arrest and then being re-interviewed by law enforcement during which he made a statement. On appeal, the issue before the Sixth Circuit was whether or not Whaley's request to talk to the officer was an actual re-initiation of contact with law enforcement. The deciding factor for the Sixth Circuit was the length of time between Whaley's request and the second interview coupled with Whaley's conduct during that three week interval:

> "However, in the present case, we do not need to decide this question, because after this exchange nothing happened for three weeks. The authorities did not contact Whaley, and Whaley made no effort to tell anyone - including agent Anderson- that he wanted to talk about the case. Whether or not Whaley's exchange with Waggoner might have at the time constituted and EDWARDS initiation , given that Whaley did nothing else during the succeeding three-week period, his actions certainly do not show a willingness and a desire to speak generally about the case. Therefore, as in EDWARDS, when Anderson removed Whaley from his cell and interrogated him without counsel present, he violated Whaley's constitutional rights."
> 13 F.3d at 968

Petitioner asserts that Whaley should govern his case. The evidence affirmatively shows that there was a two week delay

between Brandon's request to the detective and the detective pulling petitioner out of his cell and taking him in for the second interview. Petitioner did nothing during this two week interval to indicate that he had a willingness and desire to speak to the detective about his case.

Petitioner did not reinitiate contact with the detective. The detective's second interview with petitioner was in violation of Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d--378 (1981). This ground should be granted.

Ground Two:

The Third Court of Appeals erred when it found that petitioner reinititiated contact with law enforcement.

The Court of Appeals has decided an important question of State or Federal law in a way that conflicts with the applicable dicisions of the Court of Criminal Appeals and the Supreme Court of the United Statesl

In its opinion the Third Court of Appeals concluded that petitioner initiated the second interview with Detective Floiran. The evidence showed that petitioner invoked his right to counsel during his first interview with police on the night of his wife's death. Several days later when he was visited by his son, petitioner told his son that he did not remember anything from the night of his wife's death. His son suggested that it would be helpful to get the detective to tell petitioner what had happened that night. For that reason petitioner's son contacted the detective, not at petitioner's request, but rather of his own volition. The evidence clearly shows that petitioner did

(7)

not initiate contact with the detective. The detective's conduct in going to meet with petitioner for the second interview was a clear violation of Edwards v. Arizona, 451 U.S. 477, 101 S.CT.- -1880, 68 L.Ed.2d 378(1981).

After the jury was selected the trial court conducted a hearing on petitioner's motion to suppress. (R.R. II, pp. 267- -328; R.R. III, pp. 15-19; C.R. 20-22). Petitioner's son, Brandon, testified that it was his idea to have petitioner talk to the detective again. (R.R. II, pp.274-275).

Brandon testified that he told petitioner that he would ask the detective to talk to petitioner and tell petitioner what had happened. Brandon testified that petitioner agreed with this suggestion. Brandon testified that he contacted Detective Floiran about talking to petitioner. (R.R. II, pp. 272-275).

On cross-examination, Brandon testified that it was his idea to have petitioner talk to the detective again:

"Q. (BY MR.CASE) You testified earlier that he told you he didn't remember what happened, and that you told him that you would tell-or ask the detective to go speak to him.

"A. Yes.

"Q. Is that correct? And was that your-so that was your suggestion?

"A. Yes, I felt that he-he didn't have a good memory of what exactly happened. He was asking me, you know, for details of what had happened that night. And I told him I would have the detective tell him in detail because all he had been told was that he had killed his wife." (R.R.II,P.276)

(8)

Brandon testified that after talking with petitioner, he wanted the detective to tell petitioner what he had done because petitioner didn't know what happened. (R.R.II,p. 278)

Brandon testified that he went and told Detective Floiran of his idea to tell petitioner what happened and that Detective Floiran told him he'd be sure his father was told what had happened. (R.R. II,p. 278-279)

Detective Floiran testified that at some point during the first interview petitioner invoked his rights to counsel. (R.R. II,pp. 292-295)

Detective Floiran testified that several days later, he talked to Brandon. Brandon told him that petitioner had questions about what had happened the night his mother died. (R.R.pp. 296-298)

Floiran testified that after that conversation, he went to the jail, checked petitioner out of the jail and took petitioner back to his office for a second interview. (R.R.II,--pp. 296-298);(R.R. II, pp. 303-304)

At the conclusion of the testimony, the parties agreed that the second interview was approximately two weeks after the first interview. (R.R. II,p.323)

Petitioner argued that with regard to the second interview, petitioner did not reinitiate contact with the detective and thus the second interview should have been suppressed in accordance with Edwards v. Arizona, 451 U.S. 477, 101 S.CT. 1880, 68 L.Ed.2d 378(1981). The United States Supreme Court wrote:

"We now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that reght can not be

established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, <u>unless the accused himself</u> initiates further communication , exchanges, or conversations with the police" <u>Edwards v.</u> <u>-Arizona</u>, 101 S.Ct. at 1884-1885 (emphasis added)

To protect the privilege against self-incrimination guaranteed by the Fifth Amendment, police may not conduct a custodial interrogation of a suspect who has requested the assistance of counsel. <u>Minnick v. Mississippi</u>, 498 U.S. 146, 147,--111 S.Ct. 486, 112 L.Ed.2d 489 (1990); <u>Edwards v. Arizona</u>,--supra.

When a person subjected to custodial interrogation unambiguosly invokes the right to counsel, all questioning must cease. Interrogation may not be reinitiated by the police, (of course, if the arrestee reinitiates the conversation, the <u>Edwards</u> rule is satisfied), at anytime or in any manner unless the person has consulted counsel. **Period.** <u>Arizona v. Roberson</u>, 486 U.S. 675,681,108 S.Ct. 2093, 100 L.Ed.2d 704(1988), ID at--681-682.

To establish a suspect has waived his previously invoked right to counsel, the courts must prove (1) The suspect <u>himself</u>

initiated further communication with the authorities and (2) he thereafter validly waived his right to counsel. Oregon v.- Bradshaw, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405(1983); Cross v. State, 144 S.W.3d at 527.(Tex.Cr.App.2004)

The United States Supreme Courts has not broached the subject of whether a third party, on behalf of the suspect, may inititate communications with the police after the suspect has invoked his Fifth Amendment right to counsel. The Sixth Circuit Court has held that even with third party communications, the police are still prohibited from reinitiating questioning. And the impetus for reinitiation must still come from the suspect. The virtue of specifically identifying rights and duties is preserved: "Police and Prosecutors" still know, "What they may do in conducting custodial interrogation". Van Hook v. Anderson, 488 F3d 411 (6th Cir. 2007)

Applying that analysis to petitioner's case, it is clear that petitioner himself did not reinitiate contact with Detective Floiran. It was Brandon, petitioner's son. There is no evidence in the record whatsoever that it was petitioner's idea to reinitiate contact with the detective. Furthermore, the evidence is clear that Detective Floiran made no attempt to determine if petitioner had an attorney so that he could contact that attorney prior to interrogating petitioner. McCarthy v. State, 65 S.W.3d 47(Tex.Crim.App.2001). It is clear by the record that it was approximately two weeks after the first interview and when petitioner requested counsel, to when the detective conducted the 2nd interview. In accordance with CCP Art., 1:051(c), The courts should have

appointed petitioner counsel by the end of the 3rd working day of petitioner requesting counsel. Therefore, it was Detective Floiran's duty to check to see if petitioner had counsel prior to talking to petitioner.

Conclusion;

Finally, the evidence is clear that it was petitioner's son's idea to have the detective talk to petitioner, not so that petitioner could give a statement to the detective, but rather, so that the detective could tell petitioner what had happened to his wife (the victim) since petitioner had no memory of the nights events

Accordingly, the entirety of the second interview with petitioner, State's Exhibit 31 B, should have been suppressed. This point of error should be sustained.

VII

PRAYER OF RELIEF

Prayer;

Wherefore, premises considered, petitioner prays this Honorable Court will reverse the judgment of conviction for the reason herein alleged and remand for an acquittal, remand for a new trial, or enter any other relief appropiate under the facts and the law.

Respectfully Submitted

*John Fredrick Zedler*
JOHN FREDERICK ZEDLER
TDCJ# 01902409
POLUNSKY UNIT
3872 FM 350 SOUTH
LIVINGSTON, TX  77351

(12)

APPENDIX:

CERTIFICATE OF SERVICE;

I hereby certify that a true and correct copy of Petitioner's Petition for Discretionary Review was mailed to the Court of Criminal Appeals of Texas, Austin, Texas 78711 on this 19th day of November, 2015.

JOHN FREDERICK ZEDLER
TDCJ# 01902409

I, JOHN ZEDLER, TDCJ# 01902409, being presently incarcerated in the Polunsky Unit of the Texas Department of Criminal Justice in Polk County, Texas, verify and declare under penalty of perjury that the foregoing statements are true and correct. Executed on this the 19th day of November, 2015.

JOHN FREDERICK ZEDLER
TDCJ# 01902409

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00044-CR

### John Fredrick Zedler, Appellant

### v.

### The State of Texas, Appellee

---

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR-12-0771, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

## MEMORANDUM OPINION

Following the denial of his motion to suppress evidence, a jury found appellant John Zedler guilty of murder and assessed punishment at 60 years' imprisonment, and the trial court rendered judgment on the jury's verdict. *See* Tex. Penal Code § 19.02. In two points of error, Zedler contends that the trial court should have granted his motion to suppress and that the trial court's judgment contains an error that should be corrected. We will modify the trial court's judgment and affirm the judgment as modified.

## BACKGROUND

Detective Angelo Floiran and other law enforcement officials interviewed Zedler on June 27, 2012, in connection with the death of Zedler's wife. During the interview, Zedler invoked his right to counsel. A few days later, Zedler met with his son Brandon and indicated a desire to

speak with the police again. On July 11, 2012, while Zedler was in custody under suspicion for homicide, Detective Floiran again interviewed Zedler. During this second interview, Zedler waived his *Miranda* rights and made self-incriminating statements suggesting that he caused the injuries discovered on his wife's body. Zedler's subsequent motion to suppress the video recording of the second interview was denied, and the recording was published to the jury at trial. The jury found Zedler guilty of murder, and this appeal followed.

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *Goodwin v. State*, 376 S.W.3d 259, 266 (Tex. App.—Austin 2012, pet. ref'd). In doing so, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We give almost total deference to rulings on application of the law to questions of fact and to mixed questions of law and fact if resolution of those questions depends on an assessment of credibility and demeanor of witnesses. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). We review de novo pure questions of law and mixed questions of law and fact that do not depend on evaluating credibility and demeanor. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). We will affirm the trial court's ruling if the record reasonably supports it and it is correct on any theory of law applicable to the case. *State v. Duran*, 396 S.W.3d 563, 571 (Tex. Crim. App. 2013).

2

## DISCUSSION

### *Motion to suppress*

In *Edwards v. Arizona*, the United States Supreme Court held that an accused, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 484–85 (1981); *see Cross v. State*, 144 S.W.3d 521, 529 (Tex. Crim. App. 2004) ("[T]he critical inquiry is whether the suspect was further interrogated before he reinitiated conversation with law enforcement officials. If he was not, *Edwards* is not violated."). In his first point of error, Zedler contends that his Fifth Amendment rights articulated in *Edwards* were violated because Detective Floiran interviewed Zedler again after he had invoked his right to counsel in his first interview.

Zedler makes two arguments in support of his *Edwards* claim. First, Zedler argues that he did not reinitiate contact with law enforcement and that it was his son, Brandon, who asked Detective Floiran to speak to Zedler a second time.[1] However, the State contends that Brandon

---

[1] To the extent Zedler argues that an accused can *never* initiate contact with law enforcement under *Edwards* through a third party, we reject that contention. *See Van Hook v. Anderson*, 488 F.3d 411, 423 (6th Cir. 2007) (concluding that under *Edwards* a suspect "can initiate a discussion with police through the communication of a third party"); *Owens v. Bowersox*, 290 F.3d 960, 963 (8th Cir. 2002) ("[W]e do not believe that it was unreasonable for the state court to hold that a defendant may 'evince' a willingness and desire to discuss the crime by communicating with the police through a third party, especially a close relative."); *United States v. Michaud*, 268 F.3d 728, 737–38 (9th Cir. 2001) (concluding defendant initiated contact under *Edwards* through a third party); *United States v. Gaddy*, 894 F.2d 1307, 1311 (11th Cir. 1990) (concluding defendant initiated contact through his aunt). Zedler relies on the Fifth Circuit's decision in *United States v. Rodriguez* to support his argument that his conversation with Brandon did not constitute an initiation under *Edwards*. *See* 993 F.2d 1170, 1174 (5th Cir. 1993) (concluding that defendant did not initiate contact under

3

initiated contact with the detective on Zedler's behalf. Viewing the evidence in the light most favorable to the verdict, as me must, we determine that there is sufficient evidence in the record to support this conclusion.

At the hearing on the motion to suppress, Brandon testified that he spoke with Zedler a few days after the alleged murder. According to Brandon, Zedler stated that he was not sure what had happened on the night of the incident. Brandon suggested that Zedler talk to the detective again, and Zedler agreed and said he wanted to talk to the detective. Although Brandon also testified that he was unsure whether it was originally his idea or Zedler's idea for Zedler to talk to the detective again, the trial court was entitled to conclude, as it did, that it was ultimately Zedler's decision to reinitiate contact with law enforcement and that Brandon acted on Zedler's behalf when he asked Detective Floiran to speak with Zedler. *See St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007) (in ruling on motion to suppress, "the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony"). Even if it were originally Brandon's idea that Zedler should speak with Floiran, Brandon's undisputed testimony was that Zedler agreed with Brandon's suggestion and wanted to speak with the detective. Deferring to the trial court's determination of the underlying facts, we conclude, as a matter of law, that Zedler reinitiated contact with law enforcement through Brandon. *See Holman v. Kemna*, 212 F.3d 413,

---

*Edwards* through co-defendant). However, we conclude that *Rodriguez* does not stand for the proposition that an accused can never reinitiate contact with law enforcement through a third party. Instead, the *Rodriguez* court merely determined that an initiation had not occurred under the facts of that case. *Rodriguez* is distinguishable from the present case because, in *Rodriguez*, the alleged initiation occurred through a co-defendant, the co-defendant never actually told the officer that the defendant wished to speak to him, and the evidence of the officer's conversation with the co-defendant was hearsay. *See id.*

4

417 (8th Cir. 2000) (stating that "whether those facts [found by the state court] constitute an 'initiation' under *Edwards* is a legal question requiring de novo review"); *United States v. Whaley*, 13 F.3d 963, 968 (6th Cir. 1994) ("While we accept, unless clearly erroneous, the facts that the district court found, whether those facts together constitute an 'initiation' under *Edwards* is a legal question we review *de novo*.").

Second, Zedler argues that "the time lapse between [Brandon's] conversation with the detective and the detective's visit to the jail" indicates that Zedler did not wish to initiate contact with the police. In other words, Zedler is arguing that, even if his conversation with Brandon constituted an initiation under *Edwards*, that initiation had become ineffective or stale by the time Detective Floiran returned to interview Zedler.

In support of this argument, Zedler cites *United States v. Whaley*. In that case, the defendant told an officer that he would like to discuss his case, and a different officer interviewed the defendant over three weeks later. *Whaley*, 13 F.3d at 964–65. The Sixth Circuit concluded that, "[w]hether or not Whaley's exchange with [the officer] might have at the time constituted an *Edwards* initiation, given that Whaley did nothing else during the succeeding three-week period, his actions certainly do not show a willingness and a desire to speak generally about his case." *Id.* at 968. The court therefore reversed Whaley's conviction. *Id.* at 969.

Zedler has not called our attention to any Texas case holding, as *Whaley* does, that an accused's initiation under *Edwards* can become invalid merely because of the passage of time, and we have found no such case. Even assuming without deciding that an initiation can expire over time, we conclude that Zedler's initiation remained valid when Detective Floiran conducted the

5

second interview. There was no evidence presented at trial concerning the length of time between when Brandon told Floiran that Zedler would like to speak with him and when Floiran interviewed Zedler the second time. Therefore, there was no evidence that the police failed to timely act on Zedler's initiation or were responsible for any delay in conducting Zedler's second interview. Under the specific facts of this case, we cannot conclude that Floiran's second interview with Zedler demonstrated "police overreaching" of the type *Edwards* was intended to discourage. *See Griffin v. Lynaugh*, 823 F.2d 856, 861 (5th Cir. 1987); *see also id.* at 862 (stating that "these [Supreme Court] cases are clearly indicative to us that in the absence of some police interference with the exercise of the right to counsel of the accused, the *Edwards* rule is to be strictly and narrowly applied"). We therefore hold that because Zedler reinitiated contact with law enforcement through Brandon, the second interview with Detective Floiran did not violate Zedler's rights under *Edwards*. Accordingly, we overrule Zedler's first point of error.

### *Error in the judgment*

In his second point of error, Zedler contends that the trial court's judgment contains an error that should be corrected. We agree. On the first page of the judgment, in the blank labeled "Findings on Deadly Weapon," the entry is "N/A". However, the jury made an affirmative finding that Zedler used a deadly weapon during the commission of the murder, a fact noted on the judgment's second page. Accordingly, we sustain Zedler's second point of error and modify the judgment to reflect on the first page that the jury found Zedler used a deadly weapon. *See* Tex. R. App. P. 43.2(b).

6

# CONCLUSION

We affirm the judgment of conviction as modified.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Modified and, as Modified, Affirmed

Filed:   July 23, 2015

Do Not Publish

7

John F. ZEDLER #1902409
3872 FM 350 South
Polunsky Unit
Livingston TX 77351

LEGAL
MAIL

Court of criminal appeals
capitol station
P.O. Box 12308
Austin TX 78711

LEGAL
MAIL

